JEROME FOUNTAIN, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed July 14, 1926.

1. Defects in indictments and informations should be called to the attention of the trial court by a motion to quash or demurrer so that the defects, if any, may be corrected by the filing of another indictment or information. Neither the common law nor our statutes favor the policy of the defendant in waiting until the last stage of the cause and attacking such defects by a motion in arrest of judgment.

2. While the sufficiency of the allegations in the indictment may be tested by a motion in arrest of judgment, upon such motion the indictment will be liberally construed.

3. The ulterior intent—the *animus furandi*—is the predominant element in larceny, and in every offense the indictment or information must allege as well the criminal intent as the act, though not infrequently the former is involved in the averment of the latter.

4. An indictment for grand larceny, charging in substance that the defendant, certain personal property of the value of

$202.00, the goods of one B, then and there found, did steal, take and carry away, contrary to the form of the statute in such case made and provided, will be held to be sufficient when attacked by a motion in arrest of judgment, although the word "feloniously" be omitted; the intent to steal being sufficiently implied by the use of the word "steal."

A Writ of Error to the Circuit Court for Volusia County; J. J. Dickinson, Judge.

Affirmed.

*Buck and Jackson,* for Plaintiff in Error.

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BROWN, C. J.—On the 14th day of November, A. D. 1925, Jerome and Leroy Fountain, and Eldredge Thornton were indicted for grand larceny in the Seventh Judicial Circuit in and for the County of Volusia. The body of the indictment, omitting the formal parts, charged that, "On the sixth day of May, in the year of our Lord one thousand nine hundred and twenty five, in the county and state aforesaid, thirty-seven boxes of oranges, a better description of which is to the Grand Jurors unknown, of the value of Six Dollars each, and of the total value of Two Hundred Twenty Two Dollars, currency of the United States of America, of the property, goods and chattels of one H. C. Bauman, then and there being found, did steal, take and carry away; contrary to the form of the Statute in such case made and provided and against the peace and dignity of the State of Florida."

Leroy Fountain plead guilty and on the 19th day of November, 1925, by consent of counsel for the state and for plaintiff in error, a severance was granted as to Jerome

Fountain.  On the same day the jury found the plaintiff in error guilty as charged in the indictment.  Plaintiff in error, by his attorney, filed a motion in arrest of judgment, which motion was denied by the court below.  The defendant took writ of error to the judgment, assigning as error the trial court's refusal to grant the motion for arrest of judgment, and based his contention upon the insufficiency of the indictment in that it did not allege the felonious intent of the prisoner to deprive the owner of his property.

It is a well established common law principle, recognized by our courts, that, "Defects in indictment and informations should be called to the attention of the trial court by a motion to quash or a demurrer, so that the defects, if any, may be corrected by the filing of another indictment or information.  Neither the common law nor our statutes favor the policy of the defendant in waiting until the last stage of the cause and attacking such defects by a motion in arrest of judgment, the granting of which would have the effect of unraveling the whole proceedings." Smith v. State, 72 Fla. 449, 72 So. 354.

While the sufficiency of the allegations in an indictment may be tested by a motion in arrest of judgment, upon this motion the indictment will receive a liberal construction, and the courts will not reverse where the indictment does not wholly fail to allege a crime or an essential element of a crime and sufficiently states the nature and cause of the accusation against the defendant, and is not so indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him to a new prosecution for the same offense.  See Barineau v. The State, 71 Fla. 598, 72 So. 179; Robert F. Adams v. The State, 72 Fla. 32, 72 So. 473; Smith v. The State, *supra;* and cases cited.

It is true that the statute, Section 5122 of the Rev. Gen. Stats., as amended by Chapter 8563 of the laws of 1921,

does not attempt to give a full definition of larceny. It reads in part as follows: "Whoever commits larceny by stealing of the property of another any money, goods or chattels," etc., naming various kinds of personal property, and prescribing the punishment.

Blackstone defines larceny as "the felonious taking and carrying away of the personal goods of another." (Book 4, 229.) And further on, he explains that *felonious* means, done *animo furandi*—with the intent to *steal*. Lord Coke's definition was substantially the same. 3 Inst. 107. Bishop defines larceny as, "the taking and removing by trespass of personal property which the trespasser knows belongs generally or specially to another, with the felonious intent to deprive him of his ownership therein; and, perhaps, for the sake of some advantage to the trespasser, a question on which the decisions are not harmonious." Bishop's Crim. Law, 9th Ed., sec. 758. The same definition is given in Clark on Crim. Law, p. 305. See also 36 C. J. 734. Webster defines the word *steal* (the meaning of which has been pretty thoroughly understood since the eighth commandment was brought down from Sinai, or at least since it was translated into English) as: "To take, and carry away, feloniously: to take without right or leave, and with intent to keep wrongfully; as, to *steal* the personal goods of another." Among the definitions given by the Standard is: "To steal is to commit larceny."

The form of indictment for larceny at common law was practically the same under all varying facts, having been transmitted to us from early times. It is, "that on, etc., at, etc., the defendant, such and such articles of personal property, enumerated with their several values, of the goods and chattels of one X, then and there being found, feloniously did steal, take and carry away." 3 Bishop New Crim. Proc., section 697. In section 698a of the work

just quoted, it is said: "The ulterior intent—often called the *animus furandi*—is a predominant element in larceny. And in every offense, the indictment must allege as well the criminal intent as the act, though not infrequently the former is involved in the averment of the latter. So that in principle the foregoing form for larceny is inadequate unless the intent is sufficiently implied either in 'steal' or in 'feloniously,' or in both. And doubtless it should be; yet, if the question were new, this solution of it would hardly bear examination."

The omission of the word "feloniously" in an indictment does not render it invalid, or subject to motion to quash. Section 6065, Rev. Gen. Stats. It is also omitted from our statute on grand larceny, above referred to. Only the word "stealing" is used in the statute to cover the idea of the element of *animo furandi*, but this is perhaps enough when the meaning of this short, but significant, word is considered. It can hardly be denied that the word "steal" implied the intention to deprive the owner of his property. An indictment similar to the one here in question was held sufficient by this court in the case of Baldwin v. State, 46 Fla. 115, 35 So. 220, in a well considered opinion by Mr. JUSTICE COCKRELL. Plaintiff in error cites the cases of Long v. State, 11 Fla. 295, and Higginbotham v. State, 42 Fla. 573, 29 So. 410. But the sufficiency of the indictment was not involved in either of these cases; only the question as to whether the evidence was sufficient to show the intent to steal. Of course, the taking of property by mistake, or under a bona fide belief that it was the taker's own property, and without any intent to deprive the owner of his property in the thing taken, while it may give ground for a civil suit, is not stealing—and hence not larceny. While, as was said in the Baldwin case, *supra,* the use of the word "feloniously" may be necessary to supply

ambiguity in some statutory offenses, where the act may be innocent or criminal according to the motive that prompted it, there is no such difficulty here. In view of the use of the words, ''did steal, take and carry away,'' we cannot say, in the language of section 6064 of the Rev. Gen. Stats, that ''the indictment is so vague, indistinct and indefinite as to mislead the accused, and embarrass him in the preparation of his defense, or expose him after conviction or acquittal to the danger of a new prosecution for the same offense.'' See also Section 6063, Rev. Gen Stats.

Affirmed.

ELLIS AND STRUM, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.