139 So.2d 753 (1962)
George H. CANADA, Appellant,
v.
STATE of Florida, Appellee.
No. 2800.
District Court of Appeal of Florida. Second District.
April 4, 1962.
Miles C. McDonnell of Gilman & McDonnell, Winter Park, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee, and Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
SHANNON, Chief Judge.
Reversal is sought of an adjudication of guilty, based on a jury verdict, of cattle stealing, an offense condemned by Sec. 811.11, Fla. Stat., F.S.A. The defendant was sentenced to serve a three year term at hard labor in the state prison.
Testimony of the factual occurrences leading up to the arrest of defendant was conflicting in material respects. Essentially, however, it appears that on the day in question, the defendant was working with his father who had been hired to build fences on the Deseret Farms in Brevard County. Later the same day, the defendant was arrested in his pickup truck by sheriff's deputies who found the carcasses of two slaughtered beefs in the truck. According to the testimony of the defendant, he and his father were working together on a section of fence on the morning of the day in question. At about 11:00 A.M., the defendant went over to his pickup to begin preparing lunch, when he was approached by *754 Dave Hawkins, the assistant manager of Deseret Farms. The defendant testified that Hawkins said to him, "I got a couple of beef down on East Point, at the East Point Pens that I have got to butcher out, and I want you to get the truck and go down there with me to get them." Hawkins was then informed that he would have to clear this arrangement with the defendant's father. Defendant then testified that his father and a Mr. Sowell walked up and that Hawkins secured the permission of the elder Canada for the defendant to help him as requested. The defendant stated that he left the job at about 2:00 P.M. to pick up some equipment for the proposed butchering, with the understanding that he would meet Hawkins later at the agreed place.
Some time after his return to the East Point Pens, defendant testified, Hawkins arrived and that he, the defendant, shot and killed the two steers; and that they were loaded onto the truck by him and Hawkins with the aid of a winch. Then Hawkins told the defendant that he was going to be delayed and instructed defendant to "* * go to Danny Platt's and see if you can get him to help you until I can get there." It was there that defendant was apprehended by the two deputies, who later obtained a statement from him which was admitted into evidence at the trial.
The defendant's testimony regarding the receipt by him of the aforementioned instructions from Hawkins was corroborated by the testimony of his father, Homer Canada, as well as by that of William Sowell, another of Homer Canada's employees. The testimony of Hawkins was in direct conflict with that of the defendant, his father, and Sowell. It is obvious, therefore, that the defense in the instant trial was based on the testimony that he had no intention of stealing the cattle, but that his actions were the result of instructions received from the agent of the owner of the cattle.
At the conclusion of the trial, the judge instructed the jury, inter alia, "* * * that if you believe from the evidence, beyond any reasonable doubt, that the defendant, George H. Canada, was in the County of Brevard, and State of Florida, on the 18th day of October, 1960, aforesaid, did then and there steal, take and carry away the personal property to-wit, two steers as alleged in the information, or at any time within two years prior to the filing of the information in this case, you will then find the Defendant guilty as charged. If you do not so believe, or if you have a reasonable doubt about it, you will find the Defendant not guilty."
In his appeal, the defendant raises three points, only one of which we shall discuss in this opinion. The defendant challenges the portion of the lower court's instruction to the jury, set out above, on the ground that it was prejudicial to him because of its insufficiency with regard to the element of intent. It is noted from the record that no motion for new trial was filed in this case, and it further appears that defense counsel made no objection concerning the giving or refusal of instructions before the jury retired.
Sec. 920.05(g), Fla. Stat., F.S.A., provides that where the substantial rights of a defendant have been prejudiced, the court shall grant a new trial where it is established "[t]hat the court has misdirected the jury on a matter of law or has refused to give proper instruction requested by the defendant." Sec. 918.10(4) provides that "[n]o party may assign as error or grounds of appeal, the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects, and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
The defendant argues on appeal that notwithstanding the fact that no motion for new trial was filed in this cause, the insufficiency of the instruction was fundamentally prejudicial to his substantial rights as to warrant review by this court. The state on the other hand, maintains that this question *755 was not preserved for appeal and that, furthermore, the questioned instruction was sufficient because the word "steal" necessarily includes the element of intent. Although we cannot condone the procedure employed by the defendant during and after his trial, we perceive merit in his argument. Rule 6.16, subd. a, Florida Appellate Rules, 31 F.S.A., allows this court, if the interests of justice require, to review on appeal anything said or done in the cause which appears in the record, including instructions to the jury.
The statute under which the defendant was informed against, tried and convicted, is Sec. 811.11, Fla. Stat., F.S.A. which provides:
"Whoever commits larceny by stealing any horse, mule, mare, filly, colt, cow, bull, ox, steer, heifer or calf, the property of another, shall be punished by imprisonment in the state prison not less than two years nor more than five years."
Cattle stealing has thus been denominated by the legislature as larceny, the statute setting forth minimum and maximum punishment without regard to the value of the animal involved. Larceny has been defined by the Supreme Court of Florida as the stealing, taking and carrying away of the personal property of another with intent to deprive the owner thereof of his property permanently, or to convert it to the taker's or someone else's use. Masters v. State, 1947, 159 Fla. 617, 32 So.2d 276. In addition to the element of asportation, it is necessary to show that a person charged with larceny possessed a felonious intent, that is, a conscious purpose to steal that which did not belong to him. Maddox v. State, Fla. 1958, 38 So.2d 58; and Masters v. State, supra. This court is aware of the fact that the word "steal," as it is used in the ordinary parlance of lawyers and laymen alike, carries with it the element of amino furandi; and that an indictment charging that the defendant "did steal, take, and carry away * * *" was held sufficient to withstand an attack by way of motion for arrest of judgment in the case of Fountain v. State, 1926, 92 Fla. 262, 109 So. 463. In the Fountain case it was pointed out by the court that defects in an indictment or information should be called to the attention of the court by motion to quash and that, while the sufficiency of allegations in an indictment or information may be tested by a motion in arrest of judgment, upon this motion "the indictment will receive a liberal construction, and the courts will not reverse where the indictment does not wholly fail to allege a crime or an essential element of a crime * * *." The instant appeal does not draw into question the sufficiency vel non of the information and we do not think that the holding in the Fountain case, supra, is authority for upholding the charge given to the jury. This is especially true because of the particular care which must be given by a trial judge to his charges to the jury in order to avoid confusion or misdirection.
In Croft v. State, 1935, 117 Fla. 832, 158 So. 454, 455, the court stated:
"The court in its charge failed to explain to the jury that the above factor was a material element of the offense charged and that it was necessary to prove that element before the accused could be convicted in this case. Where the trial court attempts to define the offense, for the commission of which an accused is being tried, it is the duty of the court to instruct the jury as to each and every essential element of the offense charged, and a charge attempting to define the offense which does not cover material elements of the offense is necessarily misleading and prejudicial to the accused. It is equivalent to directing the jury that it is not necessary for the state to prove any elements of the offense except those included in the definition given by the court.
"To have the advantage of this right, it is not necessary for the accused to request special charges covering the elements *756 of the offense which have not been covered by the charge enbraced in the definition given to the jury by the court of its own volition because, as hereinbefore stated, it is the duty of the court to define to the jury the elements of the offense with which the accused is charged and such definition must be at least not misleading. See Finch v. State ([116] Fla. [437]) 156 So. 489."
The court then went on to hold that the charge given constituted reversible error. In the case of Motley v. State, 1945, 155 Fla. 545, 20 So.2d 798, it was held that a defendant in a criminal prosecution is entitled to have the jury instructed on the law applicable to his theory of defense where there is evidence introduced in support thereof. The court then, in considering Sec. 920.05(g), Fla. Stat., F.S.A., supra, stated: "This is not a case where the court failed or neglected to charge on some phase of the evidence which placed the burden on the defendant to request a more complete charge. This goes to the essence and entirety of the defense."
It will be remembered that in the instant case, the defense was based entirely on the ground that the taking (which was admitted) was not felonious. We conclude that the charge given in the instant case was misleading and that, therefore, it was prejudicial to the defendant.
Reversed and remanded for new trial.
KANNER and SMITH, JJ., concur.