SMITH, D. C., Associate Judge
(dissenting).
I respectfully dissent.
The appellant, Betty Angelí, a/k/a An-gelí Rogers, and one Rick Croll were charged with conspiracy to commit a capital felony, to-wit: murder in the first degree, the information charging that the said Betty Angelí, a/k/a Angelí Rogers and Rick Croll did unlawfully agree, conspire, combine or confederate with each other to kill and murder one Michael Rogers, a human being, from a premeditated design to effect the death of the said Michael Rogers, by shooting him with a handgun, contrary to F.S. 833.03 and F.S. 782.04. Prior to appellant’s trial Rick Croll entered a plea of no contest and at the time of appellant’s trial he was awaiting sentencing.
Appellant’s defense was that Rick Croll, her co-conspirator, never had any intent to kill Michael Rogers and without such an intent on his part there could be no conspiracy as charged.
Rick Croll was called as a witness by the State. On direct examination, he testified that one James Stass told him that Angelí wanted to talk to him. He and James met Angelí Rogers at The Everglades Bar. They were there for approximately an hour to an hour and a half. During that time she (Angelí Rogers) asked if he, Rick Croll, would like to make $3,000.00 and he said yes. She told him she wanted to put her husband, (Michael Rogers) out of the way, ■ wanted to kill him. He told her that he would let her know later on. When he and James Stass got to their home, they discussed the matter further and he told James he would kill Michael. James was to tell Angelí. Rick decided the best way to get rid of Michael was to shoot him. An-gelí said she would find out the best time and the best place. Angelí told Rick she wanted him to come over to her house, she wanted him to look at a gun. He went to the house, saw the gun and fired it. When Angelí asked if the gun would do the job, he told her any gun would do the job if you are close enough. Some week or week and a half later James Stass told him Angelí was next door. He, Rick, went to see her. She told him Mike was at the warehouse and that it would be a good time to shoot him. She asked, “Are you sure you can go through with it?” Rick said yes. Angelí drove him approximately three blocks from the warehouse, handed him a gun and dropped him off. Before Rick got to the warehouse, he changed his mind. “I didn’t feel like sitting the rest of my life in jail, I realized how stupid it really is.” “This is really stupid and I didn’t want any part of it.” He left the vicinity of the warehouse and went home. Some time later Jimmy Stass arrived home and he told him “I didn’t want no part of it.” Rick saw Angelí a couple of days later and told her “I didn’t want no part of it.” She told me not to welsh on her.-
Rick Croll was asked:
Q. Rick, at that time Angelí mentioned the money all the way up to the time you couldn’t go through with it because of whatever reason or change of heart, had you agreed to do it?
A. I had agreed to do it, yes.
Q. At the warehouse, you couldn’t?
A. No, sir.
Q. Way back there when you first— when you were first asked by Angelí at the Everglades all through this time, regardless of the fact you had agreed to do it, was there ever a time you were perfectly sure you could kill a man?
A. No, sir.
Q. Would it be a fair statement to say that by the time you had gotten to the warehouse you were still not sure you could kill somebody?
A. Yes, sir.
*14 Q. However, Rick, when you were at the warehouse had you discarded that idea?
A. Yes, sir.

Q. That was because why?
A. I didn’t want to spend the rest of my life in jail. I have done dumb things before, but never nothing that dumb.
Q. You never told Angelí that, though, did you?
A. No, sir.
Q. Never told her you were having second thoughts after you agreed to it?
A. No, sir.
On cross-examination, he testified:
Q. . . .
Did I understand you to say there was never any time when you thought you could kill a human being during the period of time we are here concerned with?
A. Yes, sir.
Q. Is that correct?
A. Yes, sir.
Q. During the period of September 6th to November the 6th, ’74, during that period of time at least you never were convinced you could kill a human being, is that right?
A. Yes, sir.
Q. And, yet, I think you testified on direct examination that you did in fact agree to such a plan?
A. Yes, sir.
Q. Is it not true, Mr. Croll, that it was sort of — the whole thing was sort of an ego trip to you?
A. Sort of.

Q. But, yet in your discussions with Mr. Stass you did demonstrate through words spoken by you this really seemed more of a lark than anything else, an opportunity to prove you could carry out something as big as this, is that correct?
A. Yes.

Q. You had reservations personal to yourself as to whether or not you would do it?
A. Yes, sir.

Q. (By Mr. Fleet) Do I understand, sir, that your testimony to the jury when being questioned by Mr. Bogenschutz that at all times up to and including the night when you actually had the weapon and were walking down the railroad tracks by the warehouse, you had the intent to carry out this nefarious activity with Angelí Rogers?
A. No, sir.
Q. You did not have such an intent?
A. No, sir.
Q. Is it not true that in fact you never intended to carry out the plan?
A. Yes, sir.
Q. From the time that Angelí Rogers asked you if you would work with her for the purpose of assassinating Michael Rogers, you never intended to do it, did you?
A. No, sir.

Q. I wish to make something crystal clear, Mr. Croll. Whether you told Angelí about your lack of intent or not, there is absolutely no doubt in your mind that at no time between September the 1st and December the 1st of 1974 did you at any time intend to kill Michael Rogers?
A. No, sir.
Q. Is that correct?
A. Yes, sir.
Q. That is a correct statement?
A. Yes, sir.

As previously stated, appellant’s defense was that Rick Croll, her co-conspirator, never had any intent to kill Michael Rogers and without such an intent on his part there could be no conspiracy as charged.'
In 15A C.J.S. Conspiracy § 37, p. 731, the general rule is stated as follows: “If one *15 person only feigns acquiescence in a proposal of another to pursue an unlawful enterprise, there is no conspiracy, since there is no union or concert of wills . .
In Delaney v. State, 164 Tenn. 432, 51 S.W.2d 485-487, the Court stated:
There can be no criminal combination or conspiracy unless at least two persons guiltily united or agree in the purpose to pursue the unlawful enterprise; and, if one of the two only feigns acquiescence in the proposal of the other, without criminal intent, there is no such agreement or concurrence in fact, and no conspiracy.”
The rule making the credibility and the weight of testimony questions for the jury applies notwithstanding there are contradictions or inconsistencies in the testimony of a particular witness, as, for example, where he gives two versions of a transaction, or has made statements calculated to impeach the correctness of observations to which he has testified, or where, on cross-examination, the witness contradicts himself or his testimony is inconsistent with his original testimony, . . and it is for the jury to determine which portion of his evidence or version of the matter they will believe. 88 C.J.S. Trial § 214c(2), p. 489.
Thus the testimony of the witness Rick Croll posed a jury question as to whether he ever had an intent to kill Michael Rogers.
The appellant requested the following instructions:
NO. 4
I instruct you that the statute under which this case is being tried requires that the State of Florida prove beyond and to the exclusion of every reasonable doubt that:
(1) the defendant and Richard Croll entered into an agreement to commit murder in the first degree, that is, that they did agree to effect the death of Michael Rogers, a human being, from a premeditated design.
(2) the defendant and Richard Croll actually intended to effect the death of the said Michael Rogers, a human being, from such premeditated design.
One person does not constitute an agreement within the meaning of the statute under which this case is being tried before you. There can be no conspiracy in the absence of an agreement between Angelí Rogers and Richard Croll as the issues have been framed in this case.
NO. 5
I instruct you that there can be no criminal conspiracy, sic) with one who secretly intends to frustrate the alleged conspiracy, citing Sears v. U. S., 343 Fed.2d 139 (C.A.5, 1965); U. S. v. Wray, 8 Fed.2d 429, (C.A.5, 1925); Moore v. State, 290 So.2d 603 (Miss., 1974).
NO. 6
In order to sustain a conviction of the Defendant in the case now before you, it is incumbent upon the State of Florida to prove, beyond and to the exclusion of every reasonable doubt, that both Richard Croll and Angelí Rogers possessed the necessary criminal intent to kill and murder Michael Rogers, a human being, from a premeditated design to effect the death of the said Michael Rogers. If you believe that the proof submitted to you is insufficient to sustain a finding that each of said persons, to-wit, Angelí Rogers and Richard Croll, did not-both possess such intent, then you must find the Defendant, Angelí Rogers, innocent of the accusations made against her in this case, citing Danielson v. United States, 321 Fed.2d 441, (C.A.9, 1963).
Requested Instruction No. 4 was amended to read:
NO. 4
I instruct you that the statute under which this case is being tried requires that the State of Florida prove beyond and to the exclusion of every reasonable doubt that:
(1) the defendant and Richard Croll entered into an agreement to commit murder in the first degree, that is,-that they did agree to effect the death of *16 Michael Rogers, a human being, from a premeditated design.
One person does not constitute an agreement within the meaning of the statute under which this case is being tried before you. There can be no conspiracy in the absence of an agreement between Angelí Rogers and Richard Croll.
and was granted as amended. Requested Instructions No. 5 and No. 6, supra, were denied and were not covered in other instructions given.
A defendant is entitled to have the jury instructed on the law applicable to his theory of the defense if there is any evidence to support it. Stiglitz v. State, 4 DCA 1972, 270 So.2d 410.
In Laythe v. State, 3 DCA 1976, 330 So.2d 113, the Court stated:
“At the charge conference, defense counsel requested that the jury be instructed as to withdrawal from the conspiracy based on the defense that Laythe timely terminated her involvement well before Carter committed the offense. The court denied the instruction proposed by defense counsel, but acknowledged that, ‘somewhere in the deal, a person could withdraw,’ and suggested a different instruction on withdrawal. The state objected to any charge on withdrawal, the court reserved ruling and then decided not to instruct on withdrawal.
On appeal, defendant Laythe contends that the trial court erred in failing to include the defendant’s requested instruction or the court’s own alternative instruction on withdrawal. We agree. ‘However disdainfully the trial judge may have felt about the merits of such defense from a factual standpoint, however even we may feel about it, is beside the point.’ Koontz v. State, Fla.App. 1967, 204 So.2d 224, 227. A defendant is entitled to have the jury instructed on the law applicable to his theory of defense if there is any evidence introduced to support the instruction. Canada v. State, Fla.App.1962, 139 So.2d 753; Stiglitz v. State, Fla.App.1972, 270 So.2d 410. As stated in 41 C.J.S. Homicide § 368, where there is evidence in support of any defense offered by an accused which raises an issue of fact in his favor, ‘ . . . the court should present the issue by an affirmative instruction which fairly and fully declares the law applicable thereto . . and it is error for the court, while stating the charge on the evidence against the accused, to refuse or omit to charge the jury as to the defenses which are set up by him, and which there is evidence to support . . . ’
It appears from the record that there is evidence to support defendant Laythe’s defense of withdrawal. Accordingly, we reverse and remand for a new trial
In the case sub judice, regardless of how contemptuous, despicable or disdainful the evidence as a whole might be, the Court’s denial of defendant’s requested Instruction No. 4 as originally requested and its denial of No. 5 and No. 6, or the failure to give its own alternative instruction to the jury on the law applicable to the defendant’s defense, was error.
I would reverse and remand for a new trial.