424 So.2d 726 (1982)
Frank SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 57743.
Supreme Court of Florida.
October 28, 1982.
Rehearing Denied January 27, 1983.
*728 Philip J. Padovano, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and David P. Gauldin, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a capital felony conviction for which a sentence of death was imposed. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant Frank Smith was convicted of robbery, kidnapping, sexual battery, and first-degree murder. The evidence showed that late in the evening on December 12, 1978, appellant and two accomplices went to a convenience store in Wakulla County and robbed store clerk Sheila Porter of money belonging to her employer. Then they abducted Sheila Porter from the store and took her into neighboring Leon County. There they took her to a motel room where all three men committed sexual battery upon her. Afterwards they took her to a wooded area. Accomplice Victor Hall testified at trial that he waited in the car while appellant and Johnny Copeland walked Sheila Porter into the woods. Then he heard three gunshots, after which appellant and Copeland returned to the car without Sheila. Her body was found two days later with three bullet wounds in the back of her head.
Appellant was initially indicted in Wakulla County for first-degree felony murder, robbery, kidnapping, and sexual battery. After his motion for change of venue was granted, trial commenced in Jefferson County but ended in a mistrial. Thereafter the prosecution was again taken up in Franklin County, where a second grand jury issued an indictment charging appellant with premeditated murder, robbery, kidnapping, and sexual battery. After trial the jury found appellant guilty of first-degree murder, robbery, kidnapping, and sexual battery. In accordance with the jury's recommendation, the trial judge imposed a sentence of death.
Appellant raises several questions regarding the validity of his conviction. He argues that the filing of the second indictment was improper; that the court erred in admitting into evidence some of his pretrial statements; that the court erred in admitting evidence of collateral crimes; and that the court erred in denying his requested instruction on the defense of withdrawal. Appellant also challenges as improper the imposition of the sentence of death. We find no reversible error and affirm the convictions and the sentence of death.
Appellant argues that the indictment was defective and should have been dismissed, on two grounds. He argues that the grand jury had no authority to make a substantive change in the pending indictment and he argues that the new indictment was filed so immediately prior to the commencement of the trial as to prejudice him in the preparation of his defense. Initially, the new indictment was captioned "Amended Indictment." Appellant moved to dismiss on the ground that a grand jury may not amend an indictment. Thereafter, the state moved to have the word "amended" stricken from the caption, asserting that it was a clerical error. The trial court denied appellant's motion and granted the state's. The court determined that the second grand jury had independently examined the evidence and had filed a new, *729 rather than an amended, indictment. At the beginning of the trial the state filed a notice of nolle prosequi with regard to the first indictment. Appellant is correct in his argument that a grand jury has no authority to amend an indictment to charge an additional or different offense. See Fla.R. Crim.P. 3.140(j) and Committee Note (1968); State v. Black, 385 So.2d 1372, 1375-77 (Fla. 1980) (England, J., concurring). However, a grand jury may file a completely new indictment regarding the same alleged criminal actions, even though a prior indictment is pending. See Committee Note, Fla. R.Crim.P. 3.140(j) (1968); Eldridge v. State, 27 Fla. 162, 9 So. 448 (1891).
So, a grand jury may charge a defendant with an additional or different offense by filing a second indictment. Although it may appear that the result is the same, the process is significantly different. Before filing the second indictment, the grand jury must independently evaluate the case. This requirement ensures that the grand jury itself finds the filing of additional or different charges appropriate. Since there is nothing in the record which refutes the trial court's finding that the second grand jury independently reviewed the evidence before returning the second indictment, there is no basis for us to disturb the court's ruling.
Appellant argues that the second indictment was untimely and prejudicial. We note that it was filed twenty days before the trial. Thus appellant had twenty days to prepare his defense against the additional charge of premeditated murder. This amount of preparation time was not insufficient considering the fact that the question of premeditation was already at issue in connection with the issues of intent to withdraw and intent to murder to avoid apprehension and prosecution.
Appellant's next two points on appeal concern the admissibility of pretrial statements he made to law enforcement officers before and after his arrest. Appellant argues that the statements were inadmissible because they were made after he was illegally detained, because he was denied his right to consult with counsel, and because the statements were not freely and voluntarily made.
Appellant invokes certain constitutional rules of evidence. Statements that are the product of illegal detention are inadmissible. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). A suspect has the right to consult with legal counsel before being questioned. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Pretrial incriminating statements are only admissible if they are freely and voluntarily made. The facts as shown by the record, however, do not support any of appellant's contentions regarding the admissibility of his statements.
In the afternoon of December 13th, after Sheila Porter had been reported missing, police stopped appellant in Tallahassee and questioned him. Investigators had been told by a citizen that appellant owned a car matching the description of a car mentioned on the television news. Appellant allowed officers to photograph his car and told them he had been at his grandmother's house in Tallahassee the previous night.
The officers learned from another officer that the car in their photograph had been seen parked outside a Tallahassee motel the night before. Because of this discrepancy with appellant's story, an officer went to see appellant again that evening. The officer asked appellant to accompany him to the police station for questioning, but advised him he was not obliged to go. Appellant agreed to go. At the police station appellant told investigators he had spent the night alone at the motel after being stood up by a girlfriend. He denied having been in Wakulla County the night before. After the interview appellant declined a ride home and waited several hours for his friend Johnny Copeland who was also there being questioned. He finally was taken home by police officers at about 5:00 a.m., December 14.
Later that day, after gaining information indicating that appellant's car had been seen parked at the convenience store near *730 the time of Sheila Porter's disappearance, police sought a warrant for appellant's arrest. He was arrested at 7:00 p.m., December 14, and again agreed to talk to investigators. He told them that he went with Johnny Copeland to the convenience store, but that he was asleep in the back seat of the car. He said that when he awoke there was a white girl huddled down in the front seat, and he told Copeland to get her out of his car. So, Copeland took the girl and put her in his own car. Appellant said that the next time he saw Copeland, Copeland said that he had done something to the girl and described the area where he left her. Appellant then showed police to the general area where the body was subsequently discovered.
On the morning of December 15, after helping police search for the body, appellant talked to an attorney, but did not reach a formal agreement for representation. At his first appearance later that day, appellant told the judge that he did not have an attorney but was planning to get one. Three days later appellant told his jailer that he wanted to make a statement. Police advised him of his rights and he signed a waiver form. He confessed to participating in the robbery and kidnapping. He said he was present when Johnny Copeland and Victor Hall raped Sheila Porter, but he denied participating in the rape. He said he was present when Copeland shot Sheila, and said he tried to talk him out of doing so. This account was inconsistent with the trial testimony of Victor Hall, who said that Smith did participate in the sexual battery. Hall also testified that when appellant and Copeland took the victim into the woods and three shots were fired, it was appellant who was holding the gun when they came back.
The state introduced all of these statements into evidence. Before each questioning session, appellant was advised of his rights in accordance with the Miranda form. Appellant argues however that his pre-arrest statements were inadmissible because his detention was illegal. The detention was illegal, appellant contends, because the police did not have probable cause for an arrest. The argument is without merit. Before his arrest pursuant to warrant, appellant was not detained and was not required to answer questions. He voluntarily agreed to be interviewed.
Appellant argues that his post-arrest statements were inadmissible because they were made without benefit of legal counsel. This argument also is without merit. The record shows that the statements were freely and voluntarily made after appellant had been advised of his constitutional rights. At no time did appellant ask to see a lawyer or state that he was represented by a lawyer. The evidence as a whole shows that appellant, in making the statements, was not coerced in any manner.
Appellant also argues that his inconsistent exculpatory pre-trial statements were improperly admitted to impeach other pre-trial statements. He contends that since he was not a witness his credibility was not in issue and such impeachment evidence was therefore irrelevant. We disagree. The credibility of appellant's ultimate confession was, of course, a material issue for the jury to decide. His earlier exculpatory statements, and the sequence of events showing how his story changed through the course of several interviews, were certainly relevant to this issue. Furthermore, the earlier statements and the context in which they were given were also relevant to show that appellant had attempted to avoid detection by lying to the police. See Cortes v. State, 135 Fla. 589, 185 So. 323 (1938); 1 Wharton's Criminal Evidence, § 215 (13th ed. 1972). As such they were an indication of guilt, the ultimate material issue.
Since the statements were thus relevant, they were to be deemed admissible unless excluded by some specific rule of law. § 90.402, Fla. Stat. (1979). Contrary to the claim of appellant, the statements were not inadmissible as hearsay, because they were made by the defendant and were therefore excepted from the hearsay rule. Id. § 90.803(18)(a). Furthermore, the earlier *731 exculpatory statements were offered not to prove the truth of the matters stated, but rather to show the context of appellant's confession, so they were not even hearsay at all. Id. § 90.801(1)(c).
Appellant contends that the court erred in admitting evidence of collateral crimes. Over appellant's objection, Victor Hall was allowed to testify that on the day of the robbery appellant stole some gasoline and a .22 caliber rifle. Appellant argues that the evidence was not relevant to show anything other than propensity to commit crime since there was no evidence of a relation between these matters and the crimes charged. The evidence showed that the crimes were committed with a .22 caliber pistol, not a rifle.
The evidence of the theft of the gasoline was relevant and therefore admissible, but the evidence of the theft of the rifle was irrelevant and therefore inadmissible. The theft of the gasoline was part of the res gestae of the criminal episode. See Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Ashley v. State, 265 So.2d 685 (Fla. 1972). The evidence was connected in that it showed how appellant and his accomplices were able to get around to commit the crimes and it showed motivation in that it suggested their need for money.
The theft of the rifle is not so connected with the crimes charged. That it occurred the same night is not enough to bring it within the res gestae. Although the evidence was irrelevant, appellant has failed to show how he was prejudiced. The testimony concerning the theft of the rifle was insignificant compared with the whole of the evidence of appellant's guilt of the crime charged. Since appellant has failed to show how the jury's decision could have been influenced by this one irrelevant statement, we find the error to be harmless. See State v. Wadsworth, 210 So.2d 4 (Fla. 1968).
Finally, appellant argues that his conviction should be reversed and a new trial granted because the court refused his requested jury instruction on the defense of withdrawal. He asserts that the evidence to support this defense was found in his confession in which he admitted participating in the robbery and kidnapping but maintained that he tried to talk Copeland out of killing the victim.
This contention is without merit. Victor Hall testified that after the multiple rape, he, Copeland, and appellant took Sheila Porter by automobile to a wooded area and that Copeland and appellant took the girl into the woods. Then, Hall said, he heard three gunshots, following which Copeland and appellant returned to the car. Hall said that at this point appellant was holding the pistol.
There are two theories upon which the jury might have found appellant guilty of first-degree murder based upon all the evidence, including Hall's testimony. Since there was no direct evidence establishing whether it was Copeland or appellant who actually wielded the murder weapon, the jury could have simply concluded that one of them fired the fatal shots and that the other aided and abetted the murder. § 777.011, Fla. Stat. (1977). Under this theory, assuming that only one person did the actual killing, the other could be found guilty of premeditated murder if the evidence was sufficient to show that he aided, abetted, counseled, hired, or otherwise procured the commission of the offense of premeditated murder, and it is not necessary that the jury actually determine which man did the killing and which one aided and abetted. E.g., Sons v. State, 99 So.2d 888 (Fla. 2d DCA), cert. denied, 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160 (1958).
The other theory upon which the jury could have found appellant guilty of first-degree murder is the felony murder doctrine. Under this theory appellant, as a joint participant in the crime of kidnapping, may be held liable for the acts of his co-felon and is therefore equally guilty, with the actual killer, of the murder which was a natural outgrowth and consequence of the kidnapping. Under this theory the jury *732 would not have needed to conclude that appellant had the requisite intent to be an aider and abettor.
Under either of these theories of liability, the defense of withdrawal may be established if the defendant is able to make the requisite showing. To establish the common-law defense of withdrawal from the crime of premeditated murder, a defendant must show that he abandoned and renounced his intention to kill the victim and that he clearly communicated his renunciation to his accomplices in sufficient time for them to consider abandoning the criminal plan. 1 C. Torcia, Wharton's Criminal Law § 37 (14th ed. 1978); 40 C.J.S. Homicide § 9. For a defendant whose liability is predicated upon the felony murder theory, the required showing is the same and the defense is available even after the underlying felony or felonies have been completed. Again the defendant would have to show renunciation of the impending murder and communication of his renunciation to his co-felons in sufficient time to allow them to consider refraining from the homicide.
Appellant contends that he was entitled to an instruction on withdrawal because his last pretrial statement, which was entered into evidence by way of police testimony, said that Copeland was the killer and that appellant tried to talk Copeland out of killing the girl. The testimony of Hall was that Copeland and Smith both agreed to the killing. Hall's testimony made no mention of any communication of withdrawal by appellant during the automobile trip from the motel to the murder scene. Defense counsel surely could have attempted to bring out such facts on cross-examination if Hall had heard any such renunciation.
As was pointed out above, the evidence upon which appellant relies in arguing that he was entitled to the instruction is his final pretrial statement. It is worthy of note that appellant moved to suppress his pre-trial statements and that the denial of his motion to suppress is made the subject of one of his points on this appeal.
Appellant correctly points out that a defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instructions. Motley v. State, 155 Fla. 545, 20 So.2d 798 (1945); Laythe v. State, 330 So.2d 113 (Fla. 3d DCA), cert. denied, 339 So.2d 1172 (Fla. 1976); Stiglitz v. State, 270 So.2d 410 (Fla. 4th DCA 1972); Canada v. State, 139 So.2d 753 (Fla. 2d DCA 1962). If there is any evidence of withdrawal, an instruction should be given. The trial judge should not weigh the evidence for the purpose of determining whether the instruction is appropriate. Appellant's pretrial statement, however, testified to by a state witness, seems hardly sufficient to raise the issue of withdrawal in view of the above-discussed facts. Without formulating any general harmless error rule regarding improper denial of instructions on defenses, we hold that here the error, if any, was harmless. No new trial is required.
We come now to consideration of the imposition of a sentence of death upon appellant. After the hearing of the sentencing-phase evidence and argument, the jury recommended death. The court found six statutory aggravating circumstances and one statutory mitigating circumstance. The court found that appellant had twice previously been convicted of felonies involving the use or threat of violence; that the capital felony was committed in the course of a kidnapping and in the course of flight after the commission of rape; that the capital felony was committed to prevent detection and arrest; that the capital felony was committed for pecuniary gain; that the capital felony was especially heinous, atrocious, or cruel; and that the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The court found that appellant's youthful age of nineteen at the time of the crime was a mitigating circumstance.
Appellant argues that the death penalty may not be imposed where the capital felony conviction is based on the vicarious liability of felony murder. This argument is *733 based on the concept of proportionality under the cruel and unusual punishment clause of the Eighth Amendment. Appellant relies on Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), where Justice White, concurring, said "that it violates the Eighth Amendment to impose the penalty of death without a finding that the defendant possessed a purpose to cause the death of the victim." 438 U.S. at 624, 98 S.Ct. at 2983. Since then the United States Supreme Court has held in a felony murder case that a sentence of death may not be imposed in the absence of proof that the defendant killed, attempted to kill, intended to kill, contemplated that life would be taken, or anticipated that lethal force would or might be used. Enmund v. Florida, ___ U.S. ___, 102 S.Ct. 3368, 3372, 3379, 73 L.Ed.2d 1140 (1982). It is unnecessary, however, for us to try to apply that holding in this case, since here there was sufficient evidence from which the jury could have found appellant guilty of premeditated murder.
Appellant argues that the court's finding that the capital felony was committed for the purpose of avoiding arrest is not supported by evidence. This argument has no merit since Victor Hall testified that on two separate occasions appellant and Johnny Copeland talked about killing Sheila Porter so that she would not be able to testify against them.
Appellant argues that the court erred by giving improper double consideration to a single feature of the crime in finding the murder was committed in the course of a statutorily enumerated felony and for pecuniary gain. This argument overlooks the fact that the former aggravating circumstance was based on kidnapping and sexual battery, leaving the factor of robbery to support the finding of the latter circumstance without any overlap.
Appellant argues that the finding of heinousness was improper. This argument is refuted by the proven facts of the abduction, confinement, sexual abuse, and ultimate execution-style killing of the victim. See Knight v. State, 338 So.2d 201 (Fla. 1976).
Finally, appellant challenges the court's application of the factor that the capital felony was comitted in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. § 921.141(5)(i), Fla. Stat. (1979). This statutory aggravating circumstance was added to the capital felony sentencing statute by the 1979 legislature. Ch. 79-353, Laws of Fla. Thus it was enacted after the commission of the offense in this case. Appellant argues that this new provision is unconstitutionally vague and invalid in that it does not require the proof of any additional fact not already required to establish the offense itself.
We reject the contention that paragraph (5)(i) is void for vagueness. This new aggravating circumstance was enacted to limit the use of premeditation as an aggravating circumstance in cases of first-degree murder. Premeditation is only to be relied upon as an aggravating factor when the capital felony was committed in a cold and calculated manner without any pretense of moral or legal justification. See Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, ___ U.S. ___, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). Paragraph (5)(i) may be applied to murders committed before its effective date. Id. We conclude that there was an ample basis for the judge to follow the jury's recommendation of a sentence of death.
The appellant's convictions for robbery with a firearm, kidnapping, sexual battery, and murder in the first degree are affirmed. The sentence of death is also affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.