BENTON, J.
On direct appeal, Steven Harriman seeks reversal of convictions for grand theft, and for contributing to the delinquency of his minor son. We write to address only his contention that the trial court erred in instructing the jury on the burden of proof regarding the abandonment defense he raised to the theft charge. Agreeing with the learned trial judge that the defense had the burden to prove abandonment by a preponderance of the evidence, we affirm.
I.
At a Kmart store in Escambia County, Mr. Harriman and a minor son walked into the electronics department pushing a shopping cart, left the shopping cart, and returned with an opaque, plastic storage bin. They then attempted to' open a locked display case containing video games. Unsuccessful at first, they eventually opened another display case and began to remove video games — including multiple copies of certain video games — and to place them inside the plastic storage bin.
After father and son put forty-one video games (with a retail value exceeding $1,700) in the plastic storage bin, they placed the lid on the bin, and started to push the shopping cart containing the bin toward the front of the store. Before they reached the- store exit, they changed directions, then left the cart behind. Apprehended by law enforcement still inside the store,' they no longer had the shopping cart, which by then was approximately twenty feet away still containing the bin with the video games. Or so the jury could have concluded from the evidence adduced at trial.
- On the witness stand at trial, the son maintained that, just before he and his father were apprehended, they decided to abandon the shopping cart in the store and leave because they “didn’t -have the money or the funds” to buy the video games, and never intended to steal them. The son did claim'he had “[ujnder a hundred” dollars on him to purchase some of the video games, while the officer who apprehended the pair testified that neither had “any money on them to pay for the merchandise that they were handling.”
II.
The defense requested' that' the trial court instruct the jury on the defense of abandonment, specifically that it give the last part of Florida Standard Jufy Instruction (Criminal) 5.1. The defense conceded that “grand theft is a charge that subsumes attempt as part of the charge” but argued that the evidence showed appellant “abandoned' any attempt to commit the crime,” and the state agreed that appellant was entitled to an instruction on abandonment. The trial court instructed the jury as follows:
It is not an attempt to commit theft if the defendant abandoned his attempt to commit the offense or otherwise prevented its commission under circumstances indicating a complete and voluntary renunciation of his criminal purpose^ • .
Defense counsel expressly approved of the instruction before it was given. Anticipating the instruction, the defense contended in closing argument that, notwithstanding the actions of appellant and'his son when they were near the video-game display cases, they later abandoned the shopping cart and any effort to remove the video games from the store; and that no evidence suggested the abandonment was not voluntary. Defense counsel argued:
*1046 [I]f the State can’t disprove beyond a reasonable doubt that they abandoned their attempt, you have to find him not guilty. There hasn’t been any evidence of intent. There’s absolutely been evidence of abandonment if you believe there is intent. But the State hasn’t met its burden. Because of that, you have to find him not guilty.
In rebuttal, the prosecutor argued that appellant was guilty under the theft statute because he “did some act towards committing the crime” and there was no “voluntary renunciation of his criminal purpose.” According to the state, leaving the shopping cart “was an attempt to get out of getting caught for doing something wrong.” Although the state did not directly address the defense’s argument regarding the burden of proof on the abandonment defense, it did generally discuss the state’s burden “to prove the case beyond all reasonable doubt.”
During its deliberations, the jury asked the judge which party had the burden of proof on the abandonment issue:
If we find that the Government proved that the defendant knowingly and unlawfully endeavored to obtain the video games with the intent to deprive Kmart of the property: One, is [it] the defendant’s burden to prove abandonment and what standard of proof does he have? Or two, is [it] the Government’s burden to prove he did not abandon and what is that standard?
Section 777.04(5)(a), Florida Statutes, which sets forth the statutory abandonment defense, does not specify the burden of proof it places on the defense.
After the jury’s question, the state argued to the trial judge that abandonment is an affirmative defense that concedes commission of the offense (here, a theft proven by the attempt to appropriate video games), and that the defendant had the burden of proving the affirmative defense. The defense requested that the court answer the jury’s question “by instructing the jury that the [burden of] proof is on the State of Florida, or [to] reread the burden of proof instruction.” Citing Smith v. State, 424 So.2d 726, 731-32 (Fla.1982) (discussing the common law defense of withdrawal), and reasoning that abandonment was an affirmative defense because “[f]or there to be an abandonment there must first be an attempt,” the trial court instructed the jury: “It is the defendant’s burden to prove abandonment, and the standard is by a preponderance of the evidence.”
III.
Before section 777.04(5) was enacted, Florida “recognized the common law defense of abandonment, ‘also referred to as withdrawal or renunciation.’ ” Longval v. State, 914 So.2d 1098, 1100 (Fla. 4th DCA 2005) (quoting Carroll v. State, 680 So.2d 1065, 1066 (Fla. 3d DCA 1996)). But “[abandonment was not a defense to an attempt to commit a crime under Florida’s common law.” Dixon v. State, 559 So.2d 354, 356 (Fla. 1st DCA 1990). Section 777.04(5), which made abandonment available as a defense to an attempt, was enacted in 1974. See id.-, see also Carroll, 680 So.2d at 1067 n. 3. (explaining that “[t]he effect of subsection 777.04(5), Florida Statutes, is to expand the availability of the [abandonment] defense to the charge of attempt, where at common law the defense would not otherwise have been available”).
Convicted of first-degree murder, a defendant who had acted with two accomplices argued on appeal that the trial court erred in refusing to instruct on the defense of withdrawal in Smith, 424 So.2d at 728. Smith maintained that “he tried to talk [one of his accomplices] out of killing the victim.” Id. at 731. The Smith court *1047 discussed the requirements of the withdrawal defense as follows:
[T]he defense of withdrawal may be established if the defendant is able to make the requisite showing. To establish the common-law defense of withdrawal from the crime of premeditated murder, a defendant must show that he abandoned and renounced his intention to kill the victim and that he clearly communicated his renunciation to his accomplices in sufficient time for them to consider abandoning the criminal plan.
Id. at 732 (emphasis added); see also Kane v. State, 698 So.2d 1254, 1256 (Fla. 2d DCA 1997) (“Once a person has become an active participant in the crime giving rise to the charge of felony murder, ... for withdrawal to be a permitted defense, the defendant must show a complete renunciation of the impending murders and communication of his renunciation to his co-felons .... ” (emphasis added)). Thus Smith and Kane suggest that defendants have the burden of proving abandonment.
IV.
The abandonment defense relied upon by appellant in the present case is set forth in the “Attempts, solicitation, and conspiracy” statute, section 777.04, Florida Statutes. Subsection (5) provides:
It is a defense to a charge of criminal attempt, criminal solicitation, or criminal conspiracy that, under circumstances manifesting a complete and voluntary renunciation of his or her criminal purpose, the defendant:
(a) Abandoned his or her attempt to commit the offense or otherwise prevented its commission;
(b) After soliciting another person to commit an offense, persuaded such other person not to do so or otherwise prevented commission of the offense; or
(c)After conspiracy with one or more persons to commit an offense, persuaded such persons not to do so or otherwise prevented commission of the offense.
§ 777.04(5), Fla. Stat. (2014) (emphasis added). A standard jury instruction covers the attempt statute (section 777.04), including the abandonment defense as set forth in subsection (5) of the statute. See Fla. Std. Jury Instr. (Crim.) 5.1.
Separately, the Florida theft statute defines theft (and grand theft) to include the .attempt to commit theft. § 812.014(1), Fla. Stat. (2014). Under the theft statute, “[t]he substantive, completed crime is fully proved when an attempt, along with the requisite intent, is established.” State v. Sykes, 434 So.2d 325, 327 (Fla.1983). “By including the words, ‘or endeavors to obtain or use,’ the statutory language reveals on its face a legislative intent to define theft as including the attempt to commit theft.” Id. The separate offense of “attempted grand theft does not exist in Florida.” Longval, 914 So.2d at 1101 (emphasis in original).
Voluntary abandonment may be a defense to a theft that is accomplished by an attempt to commit theft, although the crime is not charged under the attempt statute. See id. (“Since the legislature has expanded the defense of abandonment to apply to ‘criminal attempts,’ we believe the defense applies where the legislature defines a substantive crime to include an attempt.”); Carroll, 680 So.2d at 1066-67, 1067 n. 3 (holding that a defendant charged with theft was not entitled to requested jury instruction on abandonment because the evidence showed the abandonment was involuntary, but stating that a complete and voluntary abandonment would be a defense to theft).[1] But neither *1048 the last part of the standard jury instruction nor section 777.04(5) specify the burden of proof on the defense of abandonment.[2]
Section 777.04(5), which sets forth the statutory abandonment defense, closely tracks the language in Smith and Kane, although it makes no reference to the burden of proof. See § 777.04(5), Fla. Stat. (“It is a defense to a charge of criminal attempt ... that, under circumstances manifesting a complete and voluntary renunciation of his or her criminal purpose, the defendant: (a) [abandoned his or her attempt_”). We said in Dixon, however, that abandonment “is a valid defense only in cases in which a person is charged with attempting to commit an offense, ... and the defendant presents evidence showing that he or she voluntarily abandoned the attempt before committing the substantive crime.” 559 So.2d at 355 (emphasis added). Although this language could mean that the defendant has the initial burden to present a prima facie case of abandonment, after which the burden shifts to the state to disprove abandonment beyond a reasonable doubt, we are persuaded that the burden never leaves the defendant.
V.
The issue in Smith v. United States was “whether, when the defendant produces some evidence supporting ... a defense [of withdrawal from a criminal conspiracy], the Government must prove beyond a reasonable doubt that he did not withdraw outside the statute-of-limitations period.” — U.S. -, 133 S.Ct. 714, 717, 184 L.Ed.2d 570 (2013). At trial, the jury was instructed to convict the defendant on each conspiracy count if the Government proved beyond a reasonable doubt that he was a member of the conspiracies it charged and that the conspiracies remained in existence as recently as five years preceding the indictment. See id. at 718. After the jury began deliberating, it asked the court “what to do in the event that a defendant withdrew from, the conspiracies outside the relevant limitations period.” Id. “Over the defense’s objection, the court [instructed] *1049 the jury that ‘[o]nce the government has proven that a defendant was a member of a conspiracy, the burden is on the defendant to prove withdrawal from a conspiracy by a preponderance of the evidence.’ ” Id.
Smith argued on appeal that it was the Government’s burdén to prove his continued participation in the conspiracy, that is, to disprove his asserted withdrawal. Id. at 718-19. The Court rejected the argument and held the burden of establishing withdrawal “rested firmly on the defendant regardless of when the purported withdrawal took place,” id. at 719, explaining:
Allocating to a defendant the burden of proving withdrawal does not violate the Due Process Clause. While the Government must prove beyond a reasonable doubt “every fact necessary to constitute the crime with which [the defendant] is charged,” “[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required.” The State is foreclosed from shifting the burden of proof to the defendant only “when an affirmative defense does negate an element of the crime.” Where instead it “excusefs] conduct that would otherwise be punishable,” but “does not controvert any of
the elements of the offense itself,” the Government has no constitutional duty to overcome the defense beyond a reasonable doubt.
Id. (emphasis added) (citations omitted). The Court reasoned that withdrawal was an affirmative defense because, rather than negating an element of the conspiracy with which Smith was charged, “withdrawal presupposes that the defendant committed the offense” of conspiracy. Id. Under the Florida theft statute in the present case, the abandonment theory presupposed the defendant’s guilt of an attempt to steal.
Like the Florida attempt statute at issue in the present case, the federal attempt and conspiracy statute at issue in Smith, 21 U.S.C. § 846, “did not address ... the burden of proof for withdrawal.” Id. at 720. (Nor does section 777.04(5) address the question.) But, as the Court noted, the rule at common law was that “ ‘affirmative defenses ... were matters for the defendant to prove.’” Id. (citation omitted). Because “Congress left the traditional burden of proof undisturbed,” the Court in Smith “presume[d] that Congress intended to preserve the common-law rule,” and it upheld the defendant’s convictions. Id. at 720-21 (citing Dixon v. United States, 548 U.S. 1, 13-14, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006)).[3]
*1050 VI.
In the present case, appellant makes substantially the same argument that the Court rejected in Smith v. United States. Although section 777.04(5), Florida Statutes provides that abandonment “is a defense to a charge of criminal attempt, criminal solicitation, or criminal conspiracy,” the statute does not allocate the burden of proving (or disproving) abandonment to the defense or to the state. Abandonment is an affirmative defense that assumes that an attempt (or other specified offense) has been proven. See § 777.04(5)(a), Fla. Stat. Because section 777.04(5) left undisturbed “the traditional burden of proof’ applicable to affirmative defenses, Smith, 133 S.Ct. at 720, the trial court properly instructed the jury that appellant had to prove he abandoned his attempt to commit theft by a preponderance of the evidence.
Affirmed.
LEWIS and THOMAS, JJ., concur.

. Prior to Longval v. State, 914 So.2d 1098 (Fla. 4th DCA 2005), and Carroll v. State, 680 *1048 So.2d 1065 (Fla. 3d DCA 1996), we held the statutory abandonment defense was "only available in conjunction with the general attempts provision” of section 777.04. Dixon v. State, 559 So.2d 354, 356 (Fla. 1st DCA 1990) (emphasis omitted). "Under the reasoning of the Dixon opinion, abandonment could not be a defense to the crime of theft." Carroll, 680 So.2d at 1067 n. 3. The decision in Dixon relied on statutory language in section 777.04(5), Florida Statutes (1985), which provided that abandonment "is a defense under this section.” Dixon, 559 So.2d at 356 (emphasis omitted). As explained by the Longval court, the language of section 777.04(5) has since been amended to state more broadly that abandonment "is a defense to a charge of criminal attempt.” Longval, 914 So.2d at 1100-02 (“The current wording does not limit the defense to 'this section.’ The language is broad enough to embrace substantive crimes, like theft, that include attempts within their definition.”).

. Some statutes do specify the burden of proof on affirmative defenses. See § 775.027(2), Fla. Stat. (2014) ("The defendant has the burden of proving the defense of insanity by clear and convincing evidence.”); § 777.201(2), Fla. Stat. (2014) ("A person prosecuted for a crime shall be acquitted if the person proves by a preponderance of the evidence that his or her criminal conduct occurred as a result of an entrapment.”).
Appellant argues the analogy of self-defense. Self-defense is an affirmative defense that must be disproven by the state. See Mosansky v. State, 33 So.3d 756, 758 (Fla. 1st DCA 2010) ("The defendant has the burden of presenting sufficient evidence that he acted in self-defense in order to be entitled to a jury instruction on the issue. But the presentation of such evidence ... merely requires the state to present evidence that establishes beyond a reasonable doubt that the defendant did not act in self-defense.”).

. In Dixon v. United States, 548 U.S. 1, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006), the issue before the Court was “how to proceed when Congress has enacted a criminal statute ... without explicit instructions regarding the duress defense or its burden of proof.” Id. at 17, 126 S.Ct. 2437 (Kennedy, J., concurring). Writing for the majority, Justice Stevens discussed the burden of proof on affirmative defenses at common law:
[A]t common law, the burden of proving “affirmative defenses — indeed, ‘all ... circumstances of justification, excuse or alleviation’ — rested on the defendant.” Patterson [v. New York, 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ] (quoting 4 W. Blackstone, Commentaries *201). This common-law rule accords with the general evidentiary rule that "the burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party.” 2 J. Strong, McCormick on Evidence § 337, p. 415 (5th ed. 1999). And, in the context of the defense of duress, it accords with the doctrine that "where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue.” Id. at 413.
Id. at 8-9, 126 S.Ct. 2437 (citations omitted); see also Tyler v. State, 131 So.3d 811, 812-13 (Fla. 1st DCA 2014) (discussing Dixon v. United States and the defense of duress and self- *1050 defense in Florida). Because the "long-established common-law rule [wa]s that the burden of proving duress rests on the defendant,” the Court presumed from Congress’ silence on the matter that Congress intended the defendant to prove the affirmative defense of duress by a preponderance of the evidence. Dixon v. United States, 548 U.S. at 15-17, 126 S.Ct. 2437.