457 So.2d 1380 (1984)
Frank SMITH, Appellant,
v.
STATE of Florida, Appellee.
Frank SMITH, Petitioner,
v.
Louie L. WAINWRIGHT, Etc., Respondent.
Nos. 65,991, 65,992.
Supreme Court of Florida.
October 11, 1984.
Baya Harrison, III, Tallahassee, Billy H. Nolas of Plunkett, Nolas and Donnard, New York City, and Santha Sonenberg, Public Defender Service for the District of Columbia, Washington, D.C., for appellant/petitioner.
Jim Smith, Atty. Gen. and Lawrence A. Kaden, Asst. Atty. Gen., Tallahassee, for appellee/respondent.
BOYD, Chief Justice.
These consolidated cases are before the Court on (1) appeal from the denial of a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and (2) a petition for writ of habeas corpus. Appellant-Petitioner has also filed a motion *1381 for stay of execution of sentence. We affirm the denial of the motion for post-conviction relief and deny the petition for habeas corpus. Having resolved all issues adversely to appellant-petitioner, we deny his motion for stay of execution.
Frank Smith is a state prisoner under sentence of death. By jury trial he was convicted of first-degree murder, robbery, kidnapping, and sexual battery. In accordance with the recommendation of the jury, Smith was sentenced to death on the first-degree murder conviction. He was entitled to and received appellate review of his convictions and sentence of death. This Court affirmed the convictions and the sentence of death. Smith v. State, 424 So.2d 726 (Fla. 1982). Smith's subsequent petition for review was denied by the United States Supreme Court. Smith v. Florida, ___ U.S. ___, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983).
Appeal of Denial of Rule 3.850 Motion
Appellant's motion to vacate, set aside or correct judgment and sentence raised the following issues: (1) that jurors were improperly excused for cause due to their opposition to capital punishment and that, even if they were properly excused, imposing such "death qualifications" deprived appellant of trial by a jury drawn from a representative cross-section of the community; (2) that the jury instruction given on the process of weighing aggravating and mitigating circumstances placed the burden on the defendant to prove that death was not the appropriate penalty; (3) that the state at trial was improperly allowed to bolster the credibility of its principal witness before the defense had attempted to impeach him, violating the defendant's right of confrontation; (4) that the trial court erred in refusing to instruct the jury on the defense of withdrawal; (5) that the giving of jury instructions on all lesser degrees of homicide, attempted murder, and felony murder is a practice conducive to arbitrariness in violation of the Eighth Amendment; (6) that instructing the jury on all the statutory aggravating circumstances was improper; (7) that the trial court erroneously instructed the jury that its decision to recommend either life or death would have to be made by a majority vote; (8) that the trial court so instructed the jury on mitigating circumstances as to limit consideration to statutory mitigating circumstances and that the court limited its own consideration thus as well; (9) that appellant did not receive the effective assistance of counsel at trial; and (10) that appellant's sentence of death was a product of systematic racial discrimination in capital sentencing.
All but the last two of these arguments are issues that either were or could have been presented on appeal and are therefore not proper grounds for collateral challenge of the convictions or sentence. See Booker v. State, 441 So.2d 148 (Fla. 1983). Appellant argues that these grounds are cognizable even though not raised on appeal, or even though raised on appeal and decided adversely to appellant, because they constitute fundamental error. We reject this contention and find that issues (1) through (8) above were properly summarily denied by the trial court as improper grounds for a Rule 3.850 claim.
The claim that the death sentence was the product of racially discriminatory sentencing practices is in theory one that can be raised by motion under Rule 3.850. See Henry v. State, 377 So.2d 692 (Fla. 1979). However, we find that appellant did not make a sufficient showing to require the trial court to hold a hearing on the claim and we therefore affirm the trial court's summary denial of relief on this ground. See State v. Washington, 453 So.2d 389 (Fla. 1984).
The trial court properly held an evidentiary hearing on appellant's claim that the performance of his trial defense counsel was deficient. Under Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a convicted person making such a claim must identify specific acts or omissions that were deficient in the sense that they "were outside the wide range of professionally competent *1382 assistance." Id. 104 S.Ct. at 2066. The inquiry must be based on a presumption of competence and a deferential approach to counsel's strategy and tactics. The claimant who meets this requirement must then establish that the deficiency was such that there is a reasonable probability that the result of the proceeding would have been different. The United States Supreme Court explained that this second element of the necessary showing  prejudice  was shown by a failure of the adversarial testing process sufficient to undermine confidence in the outcome.
The trial court found that appellant had failed to show any deficiency or deviation from professional standards of competence on the part of defense counsel at appellant's trial. We agree and approve the trial court's analysis of the facts as follows:
The defendant was represented at trial and on direct appeal by Mr. Philip J. Padovano. Mr. Padovano represented the defendant for six (6) years from December, 1978, through the summer of 1984 until this claim was lodged against him. He represented the defendant during all phases of discovery, pre-trial hearings, the guilt phase of the trial, the penalty phase, and the direct appeal to the Florida Supreme Court.
Mr. Padovano is an experienced criminal trial lawyer with over one hundred (100) jury trials to his credit. As of the time of the defendant's trial in this case, Mr. Padovano had been involved in more than fifty jury trials. Moreover, he secured the assistance in this case of another experienced trial attorney, Mr. Martin Murray, of St. Petersburg, Florida, who had previously represented defendants in capital cases. Furthermore, Mr. Padovano has been a member of the Florida Bar for eleven (11) years and has had no grievances or claims of ineffectiveness filed against him previously.
Mr. Padovano was able to effectively communicate with the defendant through every stage of the proceedings. In fact, the defendant wrote often to Mr. Padovano and never expressed the notion that he was less than pleased with Mr. Padovano's representation. The only complaint the defendant expressed was the speed at which Mr. Padovano responded to his letters. However, this was during a two year period awaiting the Florida Supreme Court's opinion on direct appeal.
In preparing for trial Mr. Padovano spoke with hundreds of potential witnesses including members of the defendant's family. They included the defendant's sister, Jessie Smith-Givens, and his grandmother, Caldonia Smith. After interviewing these two individuals Mr. Padovano determined their testimony would not be helpful during the penalty phase of the proceedings and made the strategic choice not to call them as witnesses in defendant's behalf. He determined Jessie Smith-Givens was in a branch of the armed services and would be going to Germany thus unavailable to testify. However, he made it clear her distance from the proceeding was not the reason he chose not to call her to testify. In addition, he determined Caldonia Smith's testimony at the penalty phase would not be helpful. She had told him she did not think she would live through the experience as her health was very poor and that she did not want to testify in any event.
Mr. Padovano's pre-trial discovery included the deposition of co-defendant, Victor Hall, who had testified during the trial in the guilt phase that the defendant was the one carrying the "smoking gun" when Johnny Copeland (the other co-defendant) and Smith returned to the car from the woods in which Sheila Porter was murdered. On cross-examination, Mr. Padovano was able to impeach Hall by getting him to admit he had "lied" to the jury on direct examination. Afterward, Hall broke down and cried on the witness stand. Due to Hall's total impeachment in front of the jury, Mr. Padovano did not even "elevate to a decision" whether to call Hall as a witness in the penalty phase. While Mr. Padovano did *1383 not have an opportunity to scrutinize every detail of Hall's affidavit which the defendant attached to his motion for post-conviction relief, he was able to determine the affidavit is inconsistent with Hall's trial testimony. This fact is supported by the record.
In an effort to bring mitigating factors to the attention of the jury, Mr. Padovano obtained the services of Dr. Wallace Kennedy, a licensed psychologist and professor of psychology at Florida State University. Dr. Kennedy examined the defendant pursuant to this Court's order. He reported to Mr. Padovano that the defendant had no congenital or physiological defects. Moreover, he advised that the defendant was not incompetent or insane and did not suffer from any type of brain dysfunction. Dr. Kennedy advised Mr. Padovano the defendant was a secondary psychopath, a mental disorder acquired after birth but which does not rise to the level of incompetency or insanity. Dr. Kennedy advised further that his prognosis of Smith's future behavior was very poor. He indicated his testimony would be harmful rather than helpful and, in fact, it was his opinion Smith would kill again. Based on this information, Mr. Padovano reminded Dr. Kennedy of the attorney-client privilege and made the strategic choice not to call him as a defense witness at the penalty phase.
Mr. Padovano later learned from a subsequent conversation with Dr. Kennedy that the defendant suffered from epilepsy as a child. However, in contacting the office of Smith's physician, Dr. Brickler, Mr. Padovano was unable to verify whether or not Smith was ever a patient of Dr. Brickler.
Mr. Padovano did not have separate strategies for the guilt phase of the trial and the penalty phase. Based on the statements given the police by Smith and his co-defendants, especially Victor Hall who put the gun in Smith's hand, as well as the other State's evidence, a trial strategy was developed long before trial that the State would be held to its burden of proof. Furthermore, the defense strategy was to show that although Smith was involved in the underlying felonies he was not the murderer but rather tried to withdraw and talk Johnny Copeland out of killing Sheila Porter when he learned lethal force was about to be used against her. Thus, he argued Smith was not deserving of the death penalty. Mr. Padovano felt confident the jury was accepting his argument during the guilt phase that Smith was not the triggerman and that Hall could not be believed when the jury returned and asked what the highest offense Smith could be convicted of if he did not pull the trigger. While the question had a positive impace on Mr. Padovano, he testified it would not have changed his approach and served only to reinforce the defense strategy.
Based on the foregoing, the entire testimony before this Court in defendant's Rule 3.850 motion hearing and on the record of this case, I find the defendant's trial counsel, Mr. Philip J. Padovano, did not call character witnesses to testify in mitigation at the penalty phase for the reason their testimony would have been harmful rather than helpful. Such harmful testimony would have supported aggravating circumstances rather than mitigating ones. I find based upon the testimony that Mr. Padovano elected not to present the evidence in question and it was a considered strategic judgment.
We find that the appellant failed to establish the first element of the Strickland v. Washington test for ineffective assistance of counsel and therefore affirm the trial court's denial of post-conviction relief.

Petition for Habeas Corpus
Smith's habeas corpus petition raises the issue of denial of effective assistance of counsel on appeal. By means of this challenge to appellate counsel's performance, petitioner seeks to have this Court to provide belated review of issues which were not argued on appeal but which petitioner says should have been argued and would *1384 have resulted in favorable appellate relief if they had been argued.
Again, under Strickland v. Washington, petitioner must first show that his counsel's performance fell short of prevailing professional norms, then must show a reasonable likelihood that the deficiency affected the outcome. Bearing in mind the presumption of competence and the required deference to counsel's strategic choices, as taught by Strickland v. Washington, we find that petitioner has not identified any act or omission of his former appellate counsel that constituted a deficiency or deviation from professional norms. We therefore decline to allow petitioner to use the ineffectiveness challenge as a vehicle for further appellate review of his convictions and sentence.
The judgment of the circuit court is affirmed and the petition for writ of habeas corpus is denied. The motion for stay of execution is denied.
It is so ordered.
ADKINS, OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
SHAW, J., concurs in result only.