## Frank SMITH, Petitioner–Appellant,

v.

## Richard L. DUGGER, et al.,[*] Respondents–Appellees.

### No. 86–3333.

United States Court of Appeals, Eleventh Circuit.

March 9, 1988.

[*] The caption has been altered pursuant to Fed.R. App.P. 43(c) to reflect succession of Richard L. Dugger, to Secretary, Florida Department of Offender Rehabilitation; Tom Barton, to Superintendent of Florida State Prison, Starke, Florida; and Robert A. Butterworth, to Attorney General of the State of Florida.

Billy H. Nolas, Office of Capital Collateral Representative, Tallahassee, Fla., Santha Sonenberg, Public Defender Service for Dist. of Columbia, Washington, D.C., for petitioner-appellant.

Lawrence A. Kaden, Asst. Atty. Gen., Patricia Conners, Dept. of Legal Affairs, State of Fla., Tallahassee, Fla., for respondents-appellees.

Before RONEY, Chief Judge, HATCHETT and EDMONDSON, Circuit Judges.

RONEY, Chief Judge:

Defendant–Petitioner Frank Smith, sentenced to death in Florida for first-degree murder, appeals a district court order denying him federal habeas corpus relief. Smith raises the following six arguments on appeal:

(1) his right to a fair trial was abrogated by the trial court's refusal to instruct the jury as to his withdrawal defense to murder;

(2) his death sentence constitutes cruel and unusual punishment because the state court failed to make a finding on his individual culpability;

(3) his pre-trial statements were taken in violation of his Sixth Amendment right to counsel;

(4) he did not receive effective assistance of counsel at the penalty phase of his capital trial;

(5) the sentencing proceedings were unreliable and fundamentally flawed; and

(6) he is entitled to an evidentiary hearing on his claim that race was used as a factor in the decision to sentence him to death.

There being no showing of a violation of Smith's constitutional rights, we affirm.

Smith was charged, along with co-defendants Johnny Copeland and Victor Hall, with robbery, kidnapping, sexual battery and first-degree murder, based on events occurring on the evening of December 12, 1978. ·On that date, Smith and his two accomplices robbed a convenience store in Wakulla County, Florida, abducted the store clerk, Sheila Porter, and took her to a motel where they committed sexual battery upon her. Smith's accomplice, Victor Hall, testified that the three men later drove Sheila Porter to a wooded area. There, Hall waited in the car while Smith and Johnny Copeland took her into the woods. Hall testified that he heard three gunshots, and when Copeland and Smith returned to the car, Smith was carrying a gun. They left without Sheila Porter. Two days later, her body was found with three bullet wounds in the back of her head.

Found guilty of first-degree murder as well as the other charges, Smith was sentenced to death in accordance with the jury recommendation. The Florida Supreme Court affirmed Smith's convictions and death sentence on direct appeal. *Smith v. State*, 424 So.2d 726 (Fla.), *cert. denied*, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983).[1] The Governor of Florida denied Smith clemency and signed a warrant scheduling his execution. Smith then filed motions in the state court, seeking a stay of execution and post-conviction relief pursuant to Fla.R.Crim.P. 3.850. Both the trial court and the Florida Supreme Court

---

1. On direct appeal, Smith raised the following claims: (1) the filing of a second indictment was improper and untimely; (2) the court erred in admitting into evidence certain pre-trial statements; (3) the court erred in admitting evidence of collateral crimes; (4) the court erred in denying his requested instruction on the defense of withdrawal; (5) the imposition of the death sentence in this case violated *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); and (6) the court improperly interpreted and applied the statutory aggravating factors in sentencing Smith to death. *Smith v. State*, 424 So.2d 726 (Fla.), *cert. denied*, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983).

refused to grant a stay and denied Smith's 3.850 motion. *Smith v. State,* 457 So.2d 1380 (Fla.1984).[2]

Smith filed a petition for writ of habeas corpus in federal district court raising eighteen different claims [3] and Smith's execution was stayed to allow time for consideration of the petition. The district court held that ten of Smith's claims were procedurally barred, denied the remaining eight claims on the merits without an evidentiary hearing and granted a certificate of probable cause.[4]

**2.** Smith's motion under Rule 3.850 raised the following issues: (1) that jurors were improperly excused for cause due to their opposition to capital punishment and that, even if they were properly excused, death qualifying the jury deprived Smith of a trial by a jury drawn from a representative cross-section of the community; (2) that the jury instruction given on the process of weighing aggravating and mitigating circumstances placed the burden on the defendant to prove that death was not the appropriate penalty; (3) that the State at trial was improperly allowed to bolster the credibility of its principal witness before the defense had attempted to impeach him, violating Smith's right of confrontation; (4) that the trial court erred in refusing to instruct the jury on the defense of withdrawal; (5) that the giving of jury instructions on all lesser degrees of homicide, attempted murder and felony murder is a practice conducive to arbitrariness in violation of the Eighth Amendment; (6) that instructing the jury on all the statutory aggravating circumstances was improper; (7) that the trial court erroneously instructed the jury that its decision to recommend either life or death would have to be made by a majority vote; (8) that the trial court's instruction on mitigating circumstances limited the jury's consideration to statutory mitigating circumstances and that the court also limited its consideration of mitigating circumstances; (9) that Smith did not receive effective assistance of counsel at trial; and (10) that Smith's sentence of death was a product of systematic racial discrimination in capital sentencing. Smith also filed a petition for writ of habeas corpus in the Florida Supreme Court, raising the issue of ineffective assistance of counsel on appeal. *Smith v. State,* 457 So.2d 1380 (Fla.1984).

**3.** The following fifteen claims were listed in Smith's original petition: (1) improper admission of Smith's pre-trial statements; (2) jury instructions allowed for the death penalty to be imposed absent a jury finding that Smith actually killed or intended to kill; (3) refusal to instruct on the proffered defense of withdrawal; (4) impermissible excusal for cause of jurors with conscientious objections to the death penalty; (5) violation of Smith's constitutional right to a jury comprised of a fair cross-section of the community; (6) impermissible bolstering by the State of its own key witness before he had been impeached; (7) incorrect application of aggravating circumstances; (8) blanket instructions on all lesser included offenses at the guilt-innocence phase influenced outcome at penalty phase; (9) blanket instructions on aggravating circumstances wrongly given; (10) consideration of non-statutory mitigating circumstances precluded; (11) unconstitutional burden shifting at the penalty phase; (12) incorrect instruction at the sentencing phase respecting the jury vote; (13) race used as a factor in the decision to put Smith to death; (14) denial of an evidentiary hearing on the issue of racial discrimination; and (15) ineffective assistance of counsel at sentencing. Smith later supplemented his petition with three additional claims: (1) ineffective assistance on direct appeal; (2) improper consideration of ex parte information by Florida Supreme Court; and (3) inadequate notice of amended indictment.

**4.** The district court found that the following issues were not cognizable due to procedural default: (1) that jurors were improperly excused for cause due to their objections to the death penalty; (2) that even if excusing jurors because of their objections to the death penalty was proper, excusal in this case deprived the petitioner of a jury drawn from a representative cross-section of the community; (3) that at trial, the State was improperly permitted to bolster the credibility of its witness in violation of Smith's right of confrontation; (4) that the Florida procedure which allows a jury charge on all lesser offenses was a violation of due process because it invites inevitably arbitrary results; (5) that it was error to instruct the jury on all the statutory aggravating circumstances regardless of whether there was support for them because it created the danger that the jury's advisory verdict was based on improper aggravating circumstances or that the jury applied the circumstances in an overbroad manner; (6) that the trial court improperly precluded consideration of non-statutory mitigating circumstances; (7) that the burden of proof was unconstitutionally shifted to petitioner during the penalty phase; (8) that the trial court erroneously instructed the jury that its decision to recommend either life or death would have to be made by a majority vote; (9) that the Florida Supreme Court improperly reviewed ex parte information about defendants in capital cases; and (10) that the trial court violated Smith's due process rights by refusing to instruct the jury on his withdrawal defense.

The court reached the merits of the following claims: (1) improper admission of certain pre-trial statements; (2) failure to instruct the jury that to impose the death penalty, it had to find that Smith actually killed or intended to kill; (3) overbroad application of four aggravating circumstances; (4) the death penalty in Florida is

*Failure to Instruct on Withdrawal Defense*

Smith asserts that the trial court violated his due process rights by refusing to give a requested instruction on his withdrawal defense. Smith objected to the failure to give the instruction at trial and raised the issue on direct appeal. The State asserts that procedural default bars this Court from consideration of the constitutional claim because Smith previously framed the issue on direct appeal in terms of state law, rather than federal constitutional law. The State argues that the Florida Supreme Court invoked its procedural default rules in refusing to address in the 3.850 appeal the merits of Smith's constitutionally-based jury instruction claim on the ground that the claim "either [was] or could have been presented on appeal...." *Smith v. State,* 457 So.2d 1380, 1381 (Fla.1984).

■ The district court held there was a procedural default. The difficulty with the procedural default argument is found in the "was raised" or "could have been raised" dichotomy. If in fact the constitutionally-based jury instruction issue was raised on direct appeal, it was necessarily ruled on, whether the state court explicitly addressed it or not, and although foreclosed from state collateral attack, it would be available in the federal case as an exhausted claim. If it could have been raised, but was not, it would be barred from any state collateral review, and likewise barred from federal review. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

As far as the state court was concerned, it made no difference as a practical matter, whether the claim was barred on *res judicata* or procedural default grounds. To a federal court reviewing the case, however, it does make a difference. If the constitutional claim was made in the direct appeal, the failure of the state court to address it on direct appeal or in the 3.850 would not bar a review in federal court, either on default or exhaustion principles.

The question of Smith's preservation of his claim on direct appeal turns on whether the facts of the claim argued as state law error were sufficient to alert the state court of a constitutional issue. *Contrast Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (Petitioner's *Sandstrom* claim found to be unexhausted because jury instruction argument made on direct appeal relied solely on state law and broad constitutional argument that failure to properly instruct a jury violates the Sixth and Fourteenth Amendments) *with Hutchins v. Wainwright,* 715 F.2d 512, 519 (11th Cir.1983) (Objection on direct appeal to admissability of statements based on hearsay grounds sufficient to present constitutional confrontation clause claim to state court), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984).

■ We need not decide the procedural default issue here, however, because going to the merits it is apparent there is no substance to the constitutional claim. Smith argues that the due process right to a conviction based on proof of guilt beyond a reasonable doubt requires a trial court to charge the jury on a defense which is timely requested and supported by the evidence. Even if this argument is sound as a matter of principle, it avails Smith nothing because the instruction he now argues should have been given was never requested, and the evidence did not support the instruction he requested.

Smith sets forth his withdrawal defense claim in the following manner: *first,* he recites the constitutional underpinnings of the right to a theory of defense instruction; *second,* he notes that under Florida law, withdrawal is a defense to felony murder or to premeditated murder under an accomplice theory; and *third,* Smith asserts that there is ample evidence to support the defense in his pre-trial statements which were introduced by the State in its case-in-chief.

---

administered in a racially discriminatory manner; (5) entitlement to an evidentiary hearing on race discrimination claim; (6) ineffective assistance of counsel during sentencing; (7) in-

effective assistance of counsel on direct appeal; and (8) inadequate notice of superceding indictment.

In these statements, Smith confessed to participating in the robbery and kidnapping, but maintained that he tried to talk his accomplice, Johnny Copeland, out of killing the victim.

At trial, Smith requested the following jury instruction for his withdrawal defense:

Ladies and Gentlemen of the Jury, one of the defenses raised in this case is the defense of withdrawal.

It is a valid defense to the charge of felony murder that the defendant withdrew from the commission of the felony upon which the felony murder charge is based before the death of the victim occurred. A party may withdraw from a criminal transaction and avoid criminal liability by communicating his withdrawal to the other parties in sufficient time for them to consider terminating their criminal plan and refraining from committing the contemplated crime.

If you find from the evidence that the defendant withdrew from the offenses of robbery and kidnapping before the death of the victim then he is not criminally responsible for the death of the victim and you must find him not guilty of murder.

If on the other hand you are convinced beyond a reasonable doubt that the defendant did not withdraw from the offenses of robbery and kidnapping, and you are otherwise convinced of his guilt beyond a reasonable doubt then you must find him guilty of first degree murder, or a lesser included offense.

This instruction refers to withdrawal only from the underlying felonies as a defense to felony murder. At trial, Smith never submitted or otherwise requested an instruction on withdrawal as a defense to premeditated murder under an accomplice theory.

Smith's felony murder charge was predicated on the offenses of kidnapping and robbery. In order for the jury to be charged with Smith's proposed instruction, Smith had to produce evidence that he withdrew from the kidnapping or the robbery before the victim's death. The record reveals no evidence on Smith's withdrawal

from the underlying felonies. On the contrary, Smith admitted full participation in these offenses in his pre-trial statements introduced by the State.

There is no due process violation in the trial court's refusal to give the instruction in these circumstances.

### Enmund Claim

In *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the United States Supreme Court held that the death penalty constituted cruel and unusual punishment when a defendant did not kill, attempt to kill, intend to kill or intend that lethal force be applied. Smith contends that, because the state courts never made a specific finding regarding his individual culpability in the murder of Sheila Porter, his death sentence is invalid under *Enmund*.

Two recent Supreme Court cases have limited and clarified *Enmund*. In *Tison v. Arizona*, —— U.S. ——, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the Court held that a defendant who participates in a felony that results in murder may be sentenced to death constitutionally so long as his participation in the felony was major and his mental state was one of reckless indifference to the value of human life.

In *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), the Supreme Court determined that the requisite culpability finding should be made at some level in state court. The Court held that such a finding is entitled to a presumption of correctness in federal court, pursuant to 28 U.S.C.A. § 2254(d).

This trilogy of cases directs the federal courts to handle an *Enmund* claim by reviewing the record of the entire course of State proceedings to determine if a culpability finding has been made at some point. Such a review in this case leads us to reject Smith's *Enmund* claim.

In making a written finding in support of the imposition of the death penalty, the trial judge made the following statement:

Both the Defendant Smith, and Co-Defendant Copeland, have claimed that it

was the other who was the major actor in the murder of Sheila Porter, but the evidence contradicts this. The evidence clearly shows that Smith and Copeland acted as equals and cohorts through the entire episode. They planned the robbery; together they carried out the robbery; together they kidnapped Sheila Porter; together they planned the rape and murder of Sheila Porter; together they raped her and murdered her. The evidence, including the testimony of Co–Defendant Victor Hall, ties these two defendants together in the murder of Sheila Porter.

Smith argues that this statement is not a legitimate finding on his culpability because the trial court relied on evidence gleaned from Johnny Copeland's trial, and by going outside the record in this manner, the trial court violated Smith's right to confrontation. We need not resolve the question of the adequacy of the trial court's finding because a review of the record indicates that the Florida Supreme Court also passed on the issue of Smith's culpability.

When Smith raised the *Enmund* issue on direct appeal, the Florida Supreme Court held that it was unnecessary to make the *Enmund* finding called for in felony murder cases because "here there was sufficient evidence from which the jury could have found appellant guilty of premeditated murder." *Smith v. State,* 424 So.2d 726, 733 (Fla.), *cert. denied,* 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983). Implicit in this finding is the conclusion that Smith had the intent to kill. Smith's culpability has been properly examined in state court and found to be sufficient to justify imposition of the death penalty.

■ Smith has raised nothing to overcome the presumption of correctness to which this finding is entitled under 28 U.S.C.A. § 2254(d). Indeed, there was sufficient evidence to support this finding. The evidence at trial revealed that before renting the motel room as well as during the time the co-defendants were actually assaulting Sheila Porter, Smith and Copeland discussed killing her. The two men were particularly worried about Porter testifying against them. It was Victor Hall's testimony that both Copeland and Smith wanted to kill Porter, and when they drove to Tram Road and parked, Smith got out, pulled Porter from the car, and, along with Copeland led her into the woods by the arm. Subsequently, Hall heard three shots some two seconds apart and then saw Smith emerge from the woods with the gun in his hand.

The dictates of *Enmund* have been satisfied in this case.

### Pre–Trial Statements

Smith argues that certain of his post-arraignment statements were improperly admitted at trial because they were obtained in violation of his Sixth Amendment right to counsel. Smith's claim is premised upon *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), which held that a defendant cannot be interrogated by police after requesting appointment of counsel at his arraignment, unless the defendant initiates the interview.

A panel of this Court recently held that *Michigan v. Jackson* applied retroactively in a case where the challenged statements were introduced before the jury during the sentencing phase of the trial. *Fleming v. Kemp,* 837 F.2d 940 (11th Cir.1988). The question of the retroactivity of *Michigan v. Jackson* in cases where the statements were before the jury deciding guilt or innocence was reserved in *Fleming* and has not been decided by this Court. *See Collins v. Kemp,* 792 F.2d 987 (11th Cir.1986) (staying execution to allow briefing on issue of retroactivity of *Michigan v. Jackson* ). We need not decide the issue in this case because, even if *Michigan v. Jackson* does apply, Smith has not established a violation of his Sixth Amendment right to counsel.

■ The transcript of Smith's arraignment reveals that Smith in no way requested an attorney. Rather, after being informed of the charges against him and his *Miranda* rights, Smith stated that he did not have an attorney, "but I plan to get one." Thus, no attorney was appointed for Smith at his arraignment. The record indi-

cates that Smith had consulted with an attorney prior to the arraignment, but Smith never officially retained this attorney or any other prior to the taking of his post-arraignment statements. Smith eventually submitted a motion for appointment of counsel on December 28, 1978.

■ Assuming for the sake of argument that Smith manifested a request for counsel by his discussion with an attorney prior to his arraignment, *Michigan v. Jackson* is nevertheless inapplicable to this case. There the Supreme Court held that "if police *initiate interrogation* after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that *police-initiated interrogation* is invalid." *Michigan v. Jackson,* 475 U.S. at 636, 106 S.Ct. at 1411. (Emphasis added). The record of the suppression hearing held by the trial court affirmatively demonstrates that each of Smith's post-arraignment statements were initiated by him and not by the police.

Deputy Sheriff John Miller testified that while Smith was being transported to jail after his first appearance, Smith told Miller he should check K–Mart because that was where Johnny Copeland bought ammunition. Miller testified that he did not solicit that statement in any way. Miller said he also talked to Smith on December 16, the day after Smith's first appearance, and that Smith initiated a conversation and made other statements concerning the crime. Miller said he advised Smith of his *Miranda* rights prior to that conversation. Smith again requested to talk to Miller on December 17th. On December 18th, Smith signed a written waiver and again gave police further information concerning the crime.

The Supreme Court of Florida has previously held that Smith's waiver of his right to counsel during his post-arrest interviews was free and voluntary. *Smith v. State,* 424 So.2d 726, 730 (Fla.), *cert. denied,* 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983). Nothing in the record indicates otherwise.

■ In challenging the admissability of statements taken before his arraignment, Smith states that an attorney contacted by Smith prior to his arrest twice tried to reach him during the course of his pre-arraignment interrogation, but was turned away by police. The United States Supreme Court has held that a defendant's knowledge of an attorney's attempts to reach him is irrelevant to a knowing and voluntary waiver of the right to counsel. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). *But see Haliburton v. State,* 514 So.2d 1088 (Fla.1987) (failure to inform a defendant that an attorney was present and wished to see him violated the due process clause of the Florida Constitution). Smith's constitutional challenge to the admissability of his pre-trial statements must fail.

### Ineffective Assistance of Counsel at Penalty Phase

Smith contends that his trial counsel was constitutionally ineffective during the sentencing phase of his trial because counsel presented no evidence of mitigating circumstances during the sentencing hearing and failed to request a jury instruction on Smith's withdrawal defense during the sentencing hearing. Smith also contends that he has never received a full and fair hearing on either prong of his ineffectiveness claim.

To prevail on his claim of ineffectiveness, Smith must establish that his counsel's performance at the sentencing hearing was seriously deficient and that he suffered prejudice as a result of this deficiency. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The same standard for judging ineffective assistance claims applies to both guilt and sentencing phases of a capital trial. *Funchess v. Wainwright,* 772 F.2d 683, 688 (11th Cir.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1242, 89 L.Ed.2d 349 (1986).

Smith alleges that the decision to forego presentation of such evidence was not tactical but rather was a function of counsel's failure to prepare for the hearing by investigating potential sources of mitigating evi-

dence. Smith points to a myriad of circumstances which could have been presented to the jury: his mental history; his physical health, including the fact that he was an epileptic; his history of drug and alcohol abuse; his difficult family background, and his incarceration in an adult prison at the age of fifteen. As further indicia of his counsel's ineffectiveness in not presenting mitigating evidence, Smith notes that his attorney has admitted that he felt limited to statutory mitigating factors even though Smith was tried and sentenced after *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

When a claim of ineffectiveness is based on an attorney's failure to present evidence of mitigating circumstances, this Court has rejected the argument that such a failure constitutes ineffective assistance *per se*. Recognizing that some so-called "mitigating" evidence can actually have a negative impact upon the jury, the Court has held that "the posture of a given case may well justify, if not require, an effective attorney to refrain from presenting such evidence." *Stanley v. Zant*, 697 F.2d 955, 961 (11th Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). Thus, while an attorney is required to conduct a "reasonable investigation" into possible mitigating evidence, *Elledge v. Dugger*, 823 F.2d 1439, 1455 (11th Cir.), *withdrawn in part on reh'g*, 833 F.2d 250 (11th Cir.1987), counsel may limit presentation of such evidence in the exercise of his reasonable strategic judgment. *Lightbourne v. Dugger*, 829 F.2d 1012, 1025 (11th Cir.1987). A tactical decision not to present mitigating evidence enjoys "a strong presumption of correctness which is virtually unchallengeable." *Clark v. Dugger*, 834 F.2d 1561 (11th Cir.1987). *See also Davis v. Kemp*, 829 F.2d 1522 (11th Cir.1987).

■ Smith's trial attorney, Phillip J. Padovano, testified at length during the evidentiary hearing held in state court on Smith's ineffectiveness claim. Padovano's testimony demonstrates that he conducted an extensive investigation into Smith's background and made a strategic decision to forego presentation of the mitigating evidence he uncovered.

Padovano testified that in preparing for the case, he spent months interviewing hundreds of potential witnesses, including Smith's sister and Smith's grandmother, who was primarily responsible for raising Smith. Through these interviews, Padovano learned of Smith's troubled childhood, his history of epileptic seizures and his incarceration in an adult prison at the age of fifteen.

Padovano also obtained the services of a licensed psychologist to determine whether Smith had any mental problems which might constitute mitigating factors. Tests performed by this psychologist revealed that Smith had no congenital or physiological defect, nor was he incompetent, insane or suffering from brain dysfunction.

Padovano explained his decision not to present mitigating evidence at the sentencing hearing in the following manner:

> [Smith's] degree of participation and his degree of responsibility was both a defense to the case and a reason to mitigate the penalty.... I couldn't go into Court and argue for four days that this man tried to withdraw from the felony; that he didn't want to do it; that he tried to stop Johnny Copeland. And then when the jury found him guilty, go up to the jury and say: Well, he did it, but he was a little sick. You can't do that. You can't have any credibility doing that kind of thing.

The strategic decision made by Padovano in this case is precisely the sort of decision which should not be second-guessed by a court reviewing an ineffectiveness claim. *Tafero v. Wainwright*, 796 F.2d 1314, 1320 (11th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3277, 97 L.Ed.2d 782 (1987). As to Smith's charge that Padovano misapprehended the law as it pertained to the presentation of non-statutory mitigating factors, it is clear that Padovano's investigation went far beyond statutory mitigating factors, indicating his awareness of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). *See Clark v. Dugger*, 834 F.2d 1561 (11th Cir.1987). Pa-

dovano was not constitutionally ineffective in his handling of potential mitigating evidence during Smith's sentencing hearing.

■ As to the failure to request a jury instruction on Smith's defense of withdrawal at the sentencing phase, Padovano did make the argument at sentencing that Smith was not as culpable as Copeland and therefore the death penalty was too severe a punishment. The jury instructions included the statutory mitigating circumstance that the defendant's participation in the murder was minor compared to that of his co-perpetrator. In light of these facts, Padovano's failure to seek an instruction on withdrawal was not deficient performance.

■ Smith contends that he is entitled to a second evidentiary hearing on his ineffectiveness claim because, due to time constraints, he did not have an opportunity to adequately investigate and present his claim in state court. This allegation is based on the fact that the evidentiary hearing held in state court was scheduled within a week of Smith's obtaining counsel for the collateral proceedings. Smith has not demonstrated, however, what evidence he would present at such a hearing beyond the affidavits he filed in state court. The transcript of the hearing indicates that Padovano was extensively examined by Smith. The hearing in state court was full, fair and adequate; Smith is therefore not entitled to evidentiary hearing in federal court.

### Sentencing Proceedings

Smith contends that his sentencing hearing was unreliable and fundamentally flawed because: (1) the trial court limited consideration of non-statutory mitigating factors; (2) the trial court instructed the jury that its decision to recommend life or death had to be by majority vote; (3) the trial court's instruction on the weighing of statutory and mitigating factors shifted the burden of persuasion to Smith; (4) irrelevant considerations were interjected into the sentencing decision by the charge given on lesser-included offenses; and (5) the jury was instructed on all statutory aggra-vating factors regardless of whether they were relevant to this case.

Smith raised these claims for the first time in his motion pursuant to Rule 3.850. The Florida Supreme Court refused to address the merits of these arguments because they "could have been presented on appeal" and were not. *Smith v. State,* 457 So.2d 1380, 1381 (Fla.1984). Smith has not shown sufficient cause or prejudice to excuse his failure to raise these claims on direct appeal. Procedural default thus bars consideration of these issues.

■ On appeal, Smith does not deny procedural default. Rather, he contends that Florida so arbitrarily and inconsistently enforces its rule against collateral consideration of matters not raised on direct appeal that the rule is not an adequate procedural bar under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This precise contention has been expressly rejected by this Court in *Booker v. Wainwright,* 764 F.2d 1371, 1379 (11th Cir.), *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985) and *Hall v. Wainwright,* 733 F.2d 766, 777 (11th Cir. 1984), *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985). In these cases, this Court found the Supreme Court of Florida is consistent in its application of the contemporaneous objection and procedural default rules in capital cases.

### Race as a Factor in Sentencing

■ Smith claims that race was used as a factor in the decision to sentence him to death. Proffering several general statistical studies, including that done by Gross and Mauro, Smith contends that he is entitled to an evidentiary hearing on this issue.

No evidentiary hearing is required in this case. Even assuming the validity of the statistical studies relied on by Smith, they are insufficient to demonstrate unconstitutional discrimination under the Fourteenth Amendment, or to show irrationality, arbitrariness or capriciousness under the Eighth Amendment. *See McCleskey v.*

*Kemp,* —— U.S. ——, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).