522 So.2d 825 (1988)
Daniel E. REMETA, Appellant,
v.
STATE of Florida, Appellee.
No. 69040.
Supreme Court of Florida.
March 31, 1988.
*826 James B. Gibson, Public Defender and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Joseph N. D'Achille, Jr., Paula C. Coffman and Sean Daly, Asst. Attys. Gen., Daytona Beach, for appellee.
PER CURIAM.
Daniel E. Remeta appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm both the conviction and the sentence of death.
Remeta had been involved in a series of murders and robberies throughout three states during a two week period in early 1985. On February 8, 1985, the clerk of an Ocala, Florida, convenience store was murdered during a robbery. An autopsy of the victim revealed four gunshot wounds: one to the stomach, one to the upper chest, and two to the head, all made by a .357 Magnum gun. The appellant, Daniel Remeta, was later extradited to Florida in response to an indictment charging him with the murder.
Two days after the Ocala murder, on February 10, 1985, Remeta and one companion entered a convenience store in Waskom, Texas, where they robbed the cashier, Camillia Carroll, at gunpoint, abducted her to a location two to three hundred feet from the store and shot her five times with the .357 Magnum used in the Ocala shooting. Miraculously, Carroll lived and testified to the events of that day at Remeta's trial in Florida. At the time of the Florida trial, Remeta had not been convicted of the crimes against Carroll.
On February 13, 1985, the manager of a Stuckey's gas station located along Interstate Highway 70 in Kansas was shot and killed with the same .357 Magnum gun used in the Ocala murder. Shortly thereafter, a Kansas sheriff following Remeta's car on the highway noticed suspicious activity and signaled for him to pull over. When he approached, one of Remeta's companions exited the passenger side of the car and shot the sheriff twice.
Remeta and his companions fled the scene and went to a grain elevator, where they abducted two men and took their truck. Shortly thereafter, the men were made to lie face down in the roadway and each was shot in the back of the head and killed with the same .357 magnum gun. The truck was later chased into a farmyard by Kansas authorities and a shootout occurred, in which one of Remeta's companions was killed and the other injured. Remeta pled guilty to charges of homicide and aggravated robbery against the Stuckey's store clerk and received two consecutive life sentences. Remeta also pled guilty to the killings of the grain elevator employees and received two consecutive life sentences with no eligibility for parole for eighty-five years.
The Florida trial commenced in May, 1986. Defense counsel, after consulting with Remeta in a holding cell outside the courtroom, waived Remeta's presence during preliminary questioning of the jury venire. Before trial, the state filed a notice of intent to offer evidence of other crimes, wrongs, or acts pursuant to section 90.404(2), Florida Statutes (1985). At trial, the state was allowed to introduce the testimony of Camillia Carroll over Remeta's objection.
Carroll testified that on February 10, 1985, after Remeta and his friend had robbed the convenience store where she was working, they kidnapped her and drove her to a location two to three hundred feet away and shot her five times. Remeta objected to the testimony on the basis that it was not relevant to any material fact in issue, that the evidence was relevant solely to prove bad character or propensity, that the evidence was not necessary to the state's case, and that the evidence was not sufficiently similar to modus operandi and identity. The state presented a stipulation of fact that one of the bullets recovered from Carroll's body was fired by the gun which had killed the Ocala convenience store clerk two days earlier and which was found three days later in close proximity to Remeta.
*827 In its case-in-chief, the state also presented several statements made by Remeta which the trial court found to have been freely and voluntarily made. A Kansas Bureau of Investigation agent had interviewed Remeta at Remeta's request and related that Remeta admitted involvement in both of the convenience store clerks' shootings, but implicated his deceased companion as the triggerman in both incidents. Remeta was also interviewed at his request by a newspaper reporter. Remeta told the reporter that he and his friends had robbed the Ocala convenience store because they needed money, and that he was the only one who had planned the robbery. Remeta also admitted sole possession of the .357 magnum revolver at the time of the Ocala murder. Remeta offered several alternative explanations for killing the victim, including that he "just liked to kill people" and that he "just didn't care." In a different interview with a television reporter, Remeta made a general comment on his intent to eliminate witnesses by stating, "[L]ike Florida, they ain't got no witnesses. Anytime I seen a witness, I took him out, or at least shot him."
In an interview with a member of the state attorney's office, Remeta first stated that he had committed the Ocala murder, but, at a later point, changed his story to implicate his companion as the triggerman. There was also presented videotaped portions of Remeta's testimony in other court proceedings, in which he stated he had possession of the gun used in the Ocala murder while in Kansas. Carroll had testified it was Remeta who had the gun at the Texas convenience store robbery. Remeta, as part of his theory of defense, attempted to establish that it was his accomplice who had possession of the murder weapon and was the triggerman in the Ocala murder. Remeta was found guilty by the jury of first-degree murder for the Ocala robbery.
During the penalty phase of the trial, Remeta introduced testimony of his mother, an expert clinical psychologist, and several social workers who had known Remeta since his childhood.
The state presented evidence of appellant's prior convictions, including his pleas of guilty to the Kansas crimes of first-degree murder and aggravated robbery. It also presented portions of a videotaped interview which the appellant had with a reporter containing his admission of executing two hostages so that they would not cause trouble.
The jury recommended imposition of the death sentence and the trial judge imposed the death penalty, finding that the four statutory aggravating factors clearly outweighed the four mitigating factors.

Guilt Phase
Remeta asserts several errors with regard to the guilt phase of his trial. First, he contends that the trial court erred in failing to obtain a knowing, voluntary, and intentional waiver of his right to testify at trial. We reject this argument and find the trial court in this jurisdiction has no obligation to secure this type of affirmative waiver.
In his second point, Remeta contends that the jury should not have been permitted to hear numerous witnesses testify about the offenses committed in Texas and Kansas as this testimony was inadmissible under Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), and under sections 90.404(2) and 90.403, Florida Statutes (1985). We reject this contention and find that the evidence was properly admitted. The testimony was relevant to help establish appellant's identity and the extent of his participation in the Ocala murder in view of his asserted defense that his accomplice was the primary perpetrator and triggerman in the killing. We note that Remeta presented similar fact evidence in an effort to demonstrate that his companion possessed the Ocala murder weapon during the shootout in Kansas. We expressly reject Remeta's contention that the testimony of the Texas robbery survivor was cumulative to the evidence presented. Instead, we find it was clearly proper to establish Remeta's possession of the murder weapon and counteract Remeta's statements *828 blaming the crimes on his companion.
In his third point, appellant claims the trial court erred in not obtaining an express personal waiver from Remeta for his absence during the general qualification of the jury. Counsel for Remeta expressly waived Remeta's presence. It is important to understand the distinction between the general qualification of the jury by the court and the qualification of a jury to try a specific case. In the former, the court determines whether prospective jurors meet the statutory qualification standards or whether they will not qualify because of physical disabilities, positions they hold, or other personal reasons. The general qualification process is often conducted by one judge, who will qualify a panel for use by two, three, or more judges in multiple trials. Counsel or a defendant does not ordinarily participate in this type of qualification process, although neither is excluded from doing so. In many instances, counsel and the defendant are not present because this preliminary qualification process occurs days prior to the trial.
Under the facts of this case, it is evident that defense counsel clearly understood this type of qualification process when he said:
Your Honor, I went back and advised my client what it was. He's in the holding cell right now and I told him that these were just general questions that the court asked with respect to the age of the prospective jurors and family status, and if they had any illness, and had nothing to do with the specific questions we asked. He agreed to waive his presence at that proceeding.
It is uncontroverted that Remeta was present during the qualification of the specific jury to try his case, the entire individual voir dire, and the exercise of his peremptory challenges. We find no error in the general jury qualification process. We also totally reject Remeta's claim that his voluntary absence during his mother's testimony was error because the trial court did not make suitable inquiry. Accord, Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986). The record reflects the trial court contemporaneously inquired of the appellant and obtained an express waiver of his presence during the testimony of his mother.
After a thorough review of the entire record, we find the evidence clearly sufficient to sustain Remeta's conviction of first-degree murder.

Penalty Phase
The trial judge, following the jury's recommendation of death, found the following four aggravating circumstances to justify imposition of the death sentence: (1) that Remeta had been previously convicted of nine felonies which involved the use or threat of force to another person; specifically, three first-degree murders, two aggravated kidnappings, two aggravated robberies, an aggravated battery of a law enforcement officer, and an aggravated battery; (2) that this first-degree murder was committed while the defendant was engaged in the commission of a robbery; (3) that this first-degree murder was committed for the purpose of avoiding or preventing a lawful arrest, based on the defendant's own statements that he "took the witnesses out" or "tried to"; and (4) that this first-degree murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial court also found the following four mitigating circumstances: (1) that Remeta had a mental age of approximately thirteen years; (2) that Remeta had a deprived childhood, was raised in an unstable, poverty-stricken home by alcoholic parents and was an abused child; (3) that Remeta was of low-average to average intelligence and subject to discrimination because of his partial American Indian heritage and his speech impediment; and (4) that Remeta is a long term substance abuser, who was institutionalized from age thirteen due to delinquent and criminal behavior. After finding these specific factors, the trial court expressly determined that "the aggravating circumstances far outweigh the mitigating circumstances so that *829 the only appropriate sentence in this cause is death."
Remeta raises three challenges to the penalty phase of his trial. He first contends that the trial court erred in finding the aggravating circumstance that the murder was committed for the purpose of avoiding arrest. We reject this contention. Appellant's own statements establish a basis for the trial court to properly concluded that Remeta's predominant motive for murdering the Ocala convenience store clerk was to eliminate him as a witness. In addition, other physical and circumstantial evidence was introduced which overwhelmingly supported this aggravating circumstance. Kokal v. State, 492 So.2d 1317 (Fla. 1986); Johnson v. State, 442 So.2d 185 (Fla. 1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2182, 80 L.Ed.2d 563 (1984); Pope v. State, 441 So.2d 1073 (Fla. 1983).
In his second point, Remeta challenges the application of the aggravating circumstance that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. We also find that this aggravating circumstance is supported by the record and is consistent with the principles we recently adopted in Rogers v. State, 511 So.2d 526 (Fla. 1987). The evidence establishes that Remeta planned the robbery in advance and planned to leave no witnesses.
We find without merit Remeta's claim that the jury instructions on the aggravating circumstances were inadequate because they failed to sufficiently set forth the elements of each of the aggravating circumstances. We decline to address the claim that the trial court erred in imposing court costs on him, rather than imposing community service. As we have on numerous occasions, we reject appellant's claim that Florida death penalty statutes violate the sixth, eighth, and fourteenth amendments. See, e.g., Long v. State, 517 So.2d 664 (Fla. 1987); Smith v. State, 457 So.2d 1380 (Fla. 1984); Martin v. State, 455 So.2d 370 (Fla. 1984); Henry v. State, 377 So.2d 692 (Fla. 1979).
For the reasons expressed, we affirm first-degree murder conviction and sentence of death.
It is so ordered.
McDONALD, C.J., and OVERTON, ERHLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.